RENDERED: SEPTEMBER 23, 2010
TO BE PUBLISHED

# Supreme Court of Kentucky



2008-SC-000747-MR
AND
2009-SC-000025-MR

RAYMOND CLUTTER                                  APPELLANT


V.             ON APPEAL FROM GALLATIN CIRCUIT COURT
HONORABLE ANTHONY W. FROHLICH, JUDGE
NO. 98-CR-00007


COMMONWEALTH OF KENTUCKY                 APPELLEE


## OPINION OF THE COURT BY JUSTICE ABRAMSON

### AFFIRMING

Appellant Raymond Clutter appeals from a Judgment of the Gallatin Circuit Court, entered upon a jury verdict, convicting him of second-degree rape, second-degree sodomy, and of being a persistent felony offender in the first degree (PFO1). He was sentenced to ten years imprisonment for the rape conviction and ten years imprisonment for the sodomy conviction, both enhanced to twenty years by his PFO1 status and ordered to run concurrently for a total of twenty years imprisonment. Raising two claims of error, Clutter appeals to this Court as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. First, Clutter asserts that his case should have been dismissed due to prosecutorial delay in violation of the Interstate Agreement on

Detainers (IAD), codified in Kentucky law by KRS 440.450. Second, he claims that the trial court erred when it refused to prohibit any reference to an incriminating statement attributed to Clutter, given that the Commonwealth did not provide notice regarding the statement until the evening before trial. Finding no merit in either of Clutter's claims, we affirm his conviction and sentence.

## RELEVANT FACTS

In 1998, Clutter was indicted on the offenses that resulted in the current convictions. The offensive acts occurred in 1990 when Clutter engaged in sexual intercourse and deviate sexual intercourse with the daughter of his then-girlfriend and business partner. The victim was less than fourteen years old at the time of the offenses. Although the victim reported the incidents to school personnel soon after they occurred, she later recanted. At Clutter's 2008 trial, the victim testified that she had recanted years earlier at the request of her mother. However, when the victim gave birth to her own child in 1997, concern for that child's safety around Clutter prompted her to report Clutter's history of sexually abusing her, starting when she was only four years old. In her videotaped statement to the police, the victim recounted the history of the sexual abuse, including the two specific acts for which Clutter was ultimately charged and convicted.

As noted above, Clutter was indicted on these offenses in 1998. A trial date of July 31, 1998, was initially set, but continued by agreement of the parties until September 9, 1998. On September 1, 1998, Clutter's counsel filed

a motion for a continuance. The parties agreed to another continuance and on September 5, 1998, Clutter's counsel filed a motion for a new trial date. While this motion was pending, Clutter's bond was revoked because he had committed an additional criminal offense. Subsequently, Clutter was taken into federal custody for that offense, namely the use of interstate commerce facilities in the commission of murder for hire. He eventually pled guilty to that charge and served approximately ten years in federal prison. Clutter was tried for the instant offenses upon his release from federal custody in 2008. He was convicted of both offenses and sentenced to twenty years in accord with the jury's verdict.

## ANALYSIS

**I. Because Clutter Failed to Properly Invoke the Provisions of the Interstate Agreement on Detainers Act, There Was No Error in the Trial Court's Refusal to Dismiss the Charges Upon Grounds of Prosecutorial Delay Under the Act.**

Clutter asserts that the charges against him should have been dismissed for the failure to bring him to trial within 180 days of his having substantially complied with the provisions of the IAD. Article III of the IAD, codified at KRS 440.450, provides in relevant part:

> (1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his

3

imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(2) The written notice and request for final disposition referred to in paragraph (1) hereof shall be given or sent by the prisoner to the warden, secretary of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by certified mail, return receipt requested.

Thus, in order to start the 180-day time period under subsection (1), the prisoner must give the required notice to the warden, secretary of corrections or other official having custody of him. It then becomes that official's responsibility to attach the certificate containing the necessary information and forward both documents to the appropriate prosecuting official.

To evaluate Clutter's claim, we must determine whether and when Clutter complied with the provisions of the IAD. Clutter, having been taken into federal custody in September 1998, pled guilty to the federal charge in March 1999 and was sentenced in June 1999. In November 1999, Clutter filed a motion for speedy trial with the Gallatin Circuit Court and informed that court of his status of federal incarceration. At a hearing on his motion, the trial court told Clutter's counsel that his request needed to be made in

4

compliance with the IAD. About a year later, in November 2000, Clutter filed a *pro se* motion to dismiss the charges based on pre-indictment delay as well as a violation of his right to speedy trial. The trial court denied the motion as to Clutter's speedy trial rights, but reserved ruling on the pre-indictment delay aspect pending an evidentiary hearing. After the court's ruling, Clutter filed a reply to the Commonwealth's response. Apparently under the impression that the subsequent filing of his reply revived the previously ruled upon motion, Clutter began submitting filings designed to obtain another ruling on this same motion. Specifically, on April 24, 2001, Clutter filed a "request for final disposition." Significantly, this pleading contains an acknowledgement by Clutter that he had been advised on a total of three occasions, by two separate attorneys, that he was required to submit forms to the officials at the federal prison in order to invoke the IAD. Clutter proceeded to express his disagreement with this advice, instead asserting that the Commonwealth could have procured custody of Clutter under a separate provision of the IAD, Article IV.

Clutter then filed a *pro se* petition for a writ of mandamus in the Court of Appeals, seeking an order to compel the trial court to rule on his motion. Upon denial of the writ, Clutter renewed his motion to dismiss in the trial court in January 2002. In May 2002, the trial court remanded the motion from the docket, stating that the motion had already been ruled upon. In August 2002, Clutter filed yet another *pro se* motion to invoke his speedy trial rights under the IAD. In this motion, Clutter identified the commencement date of his

5

federal incarceration, estimated his good-time credit and his projected release date. The paragraph in the pleading containing this information is followed by "(Exhibit _____)." The exhibit identifier is blank and there are no exhibits or other attachments to the pleading. In October 2002, the trial court stated that it would take the motion under submission.

In February 2003, Clutter filed a second *pro se* petition for mandamus with the Court of Appeals. Significantly, Clutter admitted in this petition "Although Clutter has not given his request for disposition to [Bureau of Prisons] officials, he has clearly met his burden by sending his request for disposition to the Court and prosecutor with the certificate from the 'appropriate officials having custody' containing the required information to envoke [sic] the IAD, Article IV for the prosecutor to initiate proceedings." Clutter's petition was denied.

In June 2003, a status conference was held wherein Clutter's attorney told the court that it was his understanding that Clutter was refusing to properly request disposition of the charges through the federal prison authorities. Counsel told the court that he would write a letter to Clutter explaining that he must go through the prison authorities to invoke the transfer provisions of the IAD. Of course, one of the previous motions filed by Clutter conceded that he had already been advised of this requirement. In September 2003, Clutter filed another *pro se* motion, requesting trial within 180 days, again with no accompanying certificate from the federal prison warden. At a status conference in 2003, Clutter's counsel stated that he

6

believed Clutter had properly complied with the IAD. The Commonwealth responded that it would secure Clutter for trial upon receipt of the certificate from the federal prison. A few weeks later, another status conference was held, wherein the Commonwealth advised the court that it still had not received any documents from the federal prison. The court clerk advised that she had yet to receive such documents either.

In March 2006, Clutter filed a motion to dismiss upon grounds that he had not been tried within 180 days of his 1999 motion or within 180 days of his 2003 motion. In April 2006, the trial court overruled the motion, noting Clutter's continuing failure to comply with the IAD. In the summer of 2007, Clutter completed his federal sentence and was delivered to Boone County Jail where he was facing a separate indictment on a charge of capital murder. A pre-trial conference was held on the instant charges in January 2008, and trial was set for April 2008. In February 2008, Clutter again moved the court to reconsider its refusal to dismiss the indictment for failure to try him within 180 days as required by the IAD, arguing that he had substantially complied with its provisions. The motion was overruled and this case proceeded to trial in June 2009, whereupon Clutter was convicted.

The foregoing chronology and description of Clutter's purported efforts to invoke the time provisions of the IAD reveal that Clutter obstinately refused to initiate the process by providing his notice and request to the federal officials having custody of him and, consequently, he never obtained the required certificate from the prison warden. Prior to August 2002, Clutter made no

attempt to provide the information explicitly required by KRS 440.450(1). And, in his August 2002 motion, Clutter merely noted the commencement date of his federal incarceration along with his estimated good-time credit and projected release date. No certificate from the warden or any other verifying documents accompanied the motion. Nevertheless, Clutter asserts that his "substantial compliance" was sufficient to invoke the IAD's provisions. We disagree.

The IAD is a congressionally sanctioned interstate compact and is, therefore, subject to federal construction. *Norton v. Parke*, 892 F.2d 476 (6th Cir. 1989). Federal courts have emphasized the necessity of strict compliance with the procedures of Article III of the IAD, especially the requirement of certification by prison officials in the sending state. *See Ellis v. Commonwealth*, 828 S.W.2d 360, 361 (Ky. 1992). (discussing federal cases). Although there is a limited exception to the requirement of strict compliance, it applies only when strict compliance is thwarted by a public official despite a prisoner's having done everything possible to achieve strict compliance. For example, in *Schofs v. Warden, FCI, Lexington*, 509 F. Supp. 78 (E.D. Ky. 1981), substantial compliance with the IAD was deemed sufficient to invoke its provisions. In that instance, however, "[t]he petitioner requested, and was denied, through no fault of his own, the forms necessary to initiate a request for final disposition pursuant to the IAD." *Id.* at 82. Schofs otherwise complied with the IAD. Likewise, in *Pittman v. State*, 301 A.2d 509 (Del. 1973), strict compliance with the IAD was prevented by the prison official who refused to execute the proper

8

forms upon the prisoner's request and, instead, erroneously told the prisoner that the requesting state was not a party to the IAD. However, strict compliance may be excused only where the prisoner has diligently endeavored to comply, but was prevented from doing so by the failure or inaction of a public official. *Id.*

The exception is not applicable here because Clutter did not do everything possible to achieve strict compliance; rather, when repeatedly informed of the need to proceed through the federal prison officials who had custody of him, he simply refused to do so. The failure to strictly comply was solely Clutter's fault. Accordingly, the cases he relies on for substantial compliance are unpersuasive. This case is more akin to *Rhodes v. Commonwealth*, 622 S.W.2d 677 (Ky. 1981), which distinguished *Pittman* as follows:

> It is one thing for an official having custody to refuse to process a request and thus leave the prisoner to communicate as best he can with the State which has lodged a detainer for him. That was *Pittman*. It is quite a different matter, however, when a prisoner simply ignores the official having custody of him and attempts to communicate directly with the requesting State. That is this case and the difference from *Pittman* is significant and determinative.

*Rhodes*, 622 S.W.2d at 678 (*quoting Beebe v. State,* 346 A.2d 169, 171 (Del. 1975).

Where there is no obstruction to strict compliance due to a public official's conduct, failure to strictly comply and, more particularly, failure to notify the proper prison authority so that the appropriate certification may be

9

prepared is insufficient to invoke the provisions of the IAD. In *Norton v. Parke, supra,* a Kentucky prisoner sought to have an Ohio indictment dismissed for failure to bring him to trial within 180 days of his demand. However, the demand was made directly to the Ohio court in a speedy trial motion. The prisoner's failure to channel his request through the Kentucky warden and consequent absence of the warden's accompanying certificate was deemed fatal to the prisoner's IAD claim.

In *United States v. Espinoza,* 841 F.2d 326 (9th Cir. 1988) a prisoner's failure to lodge his request through prison officials having custody of him precluded him from invoking the IAD's time provisions. Similarly, in *United States v. Henson,* 945 F.2d 430 (1st Cir.1991) a prisoner's failure to provide proper certification was detrimental to his attempted compliance with the IAD. And, again, in *United States v. Moline,* 833 F.2d 190 (9th Cir.1987), a prisoner's failure to give notice to the official having custody of him was deemed a complete failure to comply with an essential element of the act.

Moreover, Clutter's attempt to shift the burden to the prosecuting state under Article IV of the IAD is simply unavailing. Article IV does provide a mechanism for the prosecuting state to secure custody of the prisoner and if this process is utilized, the prosecuting state must try the prisoner within 120 days of his arrival in the receiving state. However, whether to initiate this process is within the discretion of the prosecuting state. A prisoner's attempt to invoke the IAD's provisions under Article III does not, then, shift the burden to the prosecuting state. Under Article III, it is the prisoner's notification to the

10

official where he is being held that shifts the burden to that official to prepare and send the necessary forms. *Rhodes*, 622 S.W.2d at 677. Clutter simply failed to comply with Article III despite repeated advice as to how to comply. Accordingly, there was no error in the trial court's refusal to dismiss the indictment against Clutter for failure to comply with the IAD.

## II. The Trial Court Did Not Abuse Its Discretion By Refusing to Prohibit the Introduction of an Incriminating Statement Made by Clutter.

The evening before trial, the Commonwealth provided Clutter's counsel with supplemental discovery, consisting of an oral statement that Clutter had made to Johnny Daugherty in 1990, admitting that he had had sex with the victim. The Commonwealth recognized that the disclosure of the statement was required under RCr 7.24, which requires disclosure of the substance of any oral incriminating statement made by a defendant. The Commonwealth admitted that disclosure here was untimely and, as a result, stated that it would not introduce the statement in its case-in-chief. Prior to trial, Clutter moved the court to prohibit introduction of the statement in rebuttal as well. The trial court denied the motion and ruled that the statement could be introduced if needed for rebuttal provided that a proper foundation was laid. Although the statement was never actually introduced at trial, Clutter asserts that his right to testify in his own defense was compromised by the potential for the admission of the incriminating statement and reversal is thus warranted.

The trial court has broad discretion to determine the admissibility of rebuttal evidence and its decision in this regard is reviewed for an abuse of

11

discretion. *Chestnut v. Commonwealth,* 250 S.W.3d 288 (Ky. 2008). This Court has on previous occasions found such an abuse of discretion to have occurred where the evidence or statements were withheld from the defense altogether. *See Chestnut, supra,* 250 S.W.3d at 299 (finding an abuse of discretion in the admission of withheld evidence that "essentially gutted Appellant's defense"); *Grant v. Commonwealth,* 244 S.W.3d 39 (Ky. 2008) (finding an abuse of discretion where the withheld statements prevented defense counsel from making an informed decision as to appropriate defense strategy); *Akers v. Commonwealth,* 172 S.W.3d 414 (Ky. 2005) (same). However, where a disclosure was made at some point prior to trial, *albeit* untimely, the inquiry is whether the defendant was prejudiced by the *tardiness* in disclosure of the statement, not by the statement itself. *Beaty v. Commonwealth,* 125 S.W.3d 196 (Ky. 2003). Accordingly, Clutter's assertion that he was prejudiced because the potential for introduction of the belatedly revealed statement precluded him from testifying in his defense is unavailing. Clutter fails to focus on any prejudice caused by the *untimeliness* of the disclosure. In fact, Clutter's trial counsel acknowledged that a continuance was the proper remedy in instances of late disclosures. However, Clutter chose not to seek this remedy because he did not want to further delay the trial. Clutter argues, in part, that he did not want to risk preservation of his IAD claim by seeking a continuance. As the Commonwealth points out, though, if there had been any merit to Clutter's IAD claim, it was uncontroverted that Clutter was not tried within 180 days. Thus, there was no legitimate concern that requesting a continuance

12

based upon the late disclosure of the incriminating statement would affect the preservation of Clutter's IAD claim. Accordingly, Clutter has not established any entitlement to relief based on the Commonwealth's late disclosure of the incriminating statement Clutter had made to Johnny Daugherty.

## CONCLUSION

The trial court properly determined that Clutter's failure to comply with the provisions of the IAD precluded him from obtaining relief based on the time provisions in KRS 440.450. Further, the trial court did not abuse its discretion in refusing to prohibit the admission of Clutter's incriminating statement on rebuttal, if a proper foundation was laid, despite the Commonwealth's untimely disclosure of that statement. Accordingly, Clutter's convictions and twenty-year sentence are affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Jared Buck
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204