**James PETERS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2010–SC–000384–MR.**

Supreme Court of Kentucky.

Aug. 25, 2011.

Samuel N. Potter, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Kenneth Wayne Riggs, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

James Peters appeals from his convictions of second-degree manslaughter, first-

degree fleeing or evading, two misdemeanor convictions, and being a second-degree persistent felony offender. The convictions arise from a single-car crash wherein Appellant, allegedly under the influence of methamphetamine, lost control of his car while being pursued by police. Appellant's passenger died from injuries sustained in the crash. We affirm Appellant's convictions, but reverse as to the trial court's imposition of court costs and fines.

At approximately 2:50 a.m. on November 20, 2008, Laurel County Deputy Sheriff Richard Sapcut was on patrol duty. Sapcut was at the intersection of County Road 3094 and Highway 30 in Laurel County, when he observed Appellant's car make a sharp left turn at the intersection, fishtail, and drive off at a high rate of speed down Highway 30. Sapcut pursued Appellant, catching up with him after about a half-mile. Sapcut activated his lightbar ("blue lights") and siren, but Appellant did not stop. Instead, according to Sapcut, Appellant continued driving at a high rate of speed, exceeding 100 mph at times. Sapcut called dispatch to notify that he was in pursuit. Sapcut described Highway 30 as a two-lane road, with a number of dangerous curves, and very dark as it has no streetlights. Sapcut testified the speed limit on the road is 55 mph.

About four or five miles into the chase, Sapcut backed off, knowing that a particularly hard right curve was coming up. Sapcut observed Appellant slam on the brakes and lose control of his car. Appellant's car went off the road and down a ten-foot embankment. The car rolled over two or three times before coming to rest back on its wheels. Sapcut immediately radioed dispatch about the crash, and requested an ambulance. Sapcut stopped and ran down to Appellant's car. Appellant appeared to be trying to climb out the passenger side of the vehicle. Sapcut also observed a bag and large knife being thrown out the passenger-side window. As Sapcut approached the car, he smelled a strong odor he knew to be associated with methamphetamine manufacturing, and observed that the inside of the car was dripping with some sort of liquid. He noticed another individual, later identified as Michael Bailey, lying in the back seat of the car.

Attempting to secure the scene, Sapcut commanded both men to show their hands. Appellant complied, but Bailey was unresponsive. When back-up arrived, Appellant and Bailey were removed from the vehicle. Sapcut took Appellant back up the slope and placed him in his patrol car. Sapcut learned that Appellant had a suspended driver's license. Appellant was fidgety, twitchy, had "pinpoint" pupils, and was hard to control. Based on his experience and training, Sapcut believed Appellant was under the influence of methamphetamine. Appellant admitted to being the driver of the car.

In and around the car were found a number of items associated with methamphetamine manufacturing. Items recovered included two bags/backpacks which contained tanks of anhydrous ammonia, 117 pseudoephedrine pills, a bag of crushed Sudafed, scales, coffee filters, plastic tubing, jars, and gloves.

Appellant and Bailey were taken to the hospital for treatment. At the hospital, Appellant's blood was drawn and sent to the Kentucky State Police (KSP) laboratory for testing. Appellant had received a gash to his forehead in the crash, but was otherwise basically uninjured. Bailey, however, had been seriously injured and died at the hospital. Appellant's blood tested positive for methamphetamine.

Appellant was tried on five charges relating to the incident: wanton murder;

fleeing or evading police in the first-degree; driving a motor vehicle while license is revoked or suspended for DUI, third offense; operating a motor vehicle while under the influence of intoxicants, second offense; and being a second-degree persistent felony offender. At trial, the Commonwealth presented testimony from Sapcut and other police officers who came to the scene. The nurse who drew Appellant's blood and turned it over to police testified as to having done so. The analyst who tested Appellant's blood at the KSP laboratory, Chad Norfleet, was not available for trial. The test results showing Appellant had methamphetamine in his system were introduced through the testimony of Norfleet's co-worker, Amanda Sweet.

Appellant testified in his own defense, and acknowledged that he was the driver of the car. He testified that on the night in question, he had picked up Michael Bailey at his (Bailey's) house, and that they were on their way to his (Appellant's) house. He denied having fishtailed and sped off at the intersection, and denied knowing that he was being pursued by police. He testified that he did not see any blue lights behind him or hear a siren. Appellant testified that he could not have been traveling 100 mph, because his car had a bad transmission, and could not go that fast. Appellant testified that he could not have been going faster than 65 mph. He denied having thrown anything out the window after the crash. Appellant denied that the methamphetamine-related items found in and around the car, or in the bags/backpacks, were his. He testified that when he picked Bailey up, Bailey had put a backpack in the trunk, but that he (Appellant) had not asked what was in it.

Appellant admitted that he was a methamphetamine user. Appellant testified that while methamphetamine "was in my system" at the time of the incident, he had not done any methamphetamine (or other drugs) before driving that night. Appellant testified that it had been twelve or sixteen hours since he had last used, that he had slept since then, and had not felt impaired when he drove that night. Appellant testified that Michael Bailey was his best friend, and that he did not mean to kill him.

In rebuttal, the Commonwealth recalled Deputy Sapcut, and played the tape recording of his call to dispatch when he was chasing Appellant. Sapcut's siren could be heard on the tape recording.

The jury acquitted Appellant of wanton murder, finding him guilty of the lesser included offense of second-degree manslaughter instead. The jury found Appellant guilty of the remaining charges. Appellant was ultimately sentenced to a total of twenty years' imprisonment.

### Error in admission of lab results

As proof that Appellant had been driving under the influence of methamphetamine, the Commonwealth sought to introduce the results of Appellant's blood test. A sample of Appellant's blood, taken at the hospital after the crash, was sent to the Kentucky State Police laboratory for testing. KSP lab technician Chad Norfleet performed the testing, and prepared and signed a "Report of Laboratory Examination." The report indicated that Appellant's blood was tested for drugs and that said testing showed Appellant's blood contained "Methamphetamine 0.037 mg%."

Norfleet did not testify at Appellant's trial because he was attending training. Norfleet's co-worker, lab technician Amanda Sweet, reviewed Norfleet's report and documentation, and testified in his place. Sweet described the general procedures the KSP lab technicians are required to follow. She further testified that, having

reviewing Norfleet's documentation, it appeared to her that he had followed the proper procedures.

Sweet testified that Norfleet had tested Appellant's blood sample for drugs, and that Norfleet reported that the sample contained methamphetamine at a concentration of .037 milligram percent. Norfleet's report was admitted into evidence over defense objection on grounds that it was cumulative of Sweet's testimony. On cross-examination, Sweet acknowledged that she had not participated in, or observed, the testing of Appellant's blood, and that her knowledge was based solely on what was contained in Norfleet's report and documentation.

On appeal, Appellant contends that, pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Melendez–Diaz v. Massachusetts,* — U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), his right to confront the witnesses against him was violated when the KSP lab report and its conclusions were admitted at trial in the absence of Norfleet. The Commonwealth agrees that *Melendez–Diaz* controls this case, and, because Norfleet did not testify, the admission of the lab results/report violated the Confrontation Clause. Appellant concedes the error was not preserved, and requests palpable error review per RCr 10.26.

In the landmark case of *Crawford v. Washington,* the United States Supreme Court revisited the Confrontation Clause and overruled its decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Crawford* recognized that the purpose of the Confrontation Clause is to ensure the reliability of evidence, but that it is a *procedural,* not substantive, guarantee—a constitutional right that cannot be usurped by state or federal rules of evidence or judicial determinations of "reliability." *Rankins v.*

*Commonwealth,* 237 S.W.3d 128, 130 (Ky. 2007) (citing *Crawford,* 541 U.S. at 61, 124 S.Ct. 1354). Accordingly, the *Roberts* test, which allowed cross-examination to be replaced by "hearsay exceptions" and "particularized guarantees of trustworthiness" as surrogate means of assessing reliability, was deemed by the *Crawford* Court as fundamentally at odds with the Confrontation Clause and original intent, and discarded. *Id.*

*Crawford* held that the Sixth Amendment prohibits the admission of the testimonial statement of a declarant who does not appear at trial, unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68, 124 S.Ct. 1354. *Crawford* referred to "testimonial" statements, because it is statements of a testimonial character, as opposed to other hearsay, which cause the declarant to be a witness against the accused for purposes of the Confrontation Clause. *See Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (citing *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354).

The issue before this Court was decided by the United States Supreme Court in *Melendez–Diaz v. Massachusetts,* 129 S.Ct. 2527. Melendez–Diaz was charged with cocaine trafficking. Seized substances were sent to the state police lab for testing. At trial, the prosecutor submitted three "certificates of analysis," which showed the results of the forensic analysis. The certificates, which were sworn to by the analysts who had performed the testing, stated that the substances tested were found to contain cocaine. The analysts themselves did not testify at trial, and the certificates were admitted over defense objection on grounds that the Confrontation Clause required the analysts to testify in person. The Court agreed, holding that, under

*Crawford,* the certificates of analysis were testimonial statements, and the analysts were witnesses for purposes of the Sixth Amendment. *Id.* at 2532. Therefore, the Court held, "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial." *Id.* (citing *Crawford,* 541 U.S. at 54, 124 S.Ct. 1354) (internal quotation marks omitted).

Pursuant to *Melendez–Diaz,* the KSP lab report is a testimonial statement. The report, which states Appellant's blood was tested for drugs and found to contain methamphetamine, is essentially identical to the certificates of analysis held to be testimonial statements in *Melendez–Diaz.* Because the report is a testimonial statement, neither it, nor its contents, could be admitted at trial in the absence of the declarant, Norfleet.[1] The Commonwealth concedes this point.

■ The error, however, is unpreserved. Defense counsel did not object to Sweet's testifying to the contents of the report. Although defense counsel objected to the admission of the report itself, the objection was not based on Confrontation Clause grounds, but on grounds that the report was cumulative of Sweet's testimony.[2] Accordingly, Appellant requests review per RCr 10.26.

■ A party claiming palpable error must show a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law. *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky.2006). Aside from the lab report, considerable other evidence supported the inference that Appellant was

driving under the influence of methamphetamine. Deputy Sapcut observed Appellant driving in a reckless manner, and had the opportunity to observe Appellant immediately after the accident. Sapcut testified that Appellant was exhibiting symptoms which, based on his experience and training, were consistent with being under the influence of methamphetamine. Sapcut and other police officers testified as to smelling a strong odor associated with methamphetamine manufacturing coming from Appellant's car. In and around the car were found numerous items used in methamphetamine manufacturing. Most significantly, Appellant admitted he was a methamphetamine user, and that he had it in his system at the time of the crash. In light of the above, we see no palpable error.

*Rebuttal Evidence*

■ In the prosecution's case-in-chief, on direct, Deputy Sapcut testified that he activated his blue lights and siren when attempting to stop Appellant. Appellant, testifying in his own defense, claimed he never saw blue lights or heard a siren. Therefore, the prosecutor wanted to play in the Commonwealth's case-in-rebuttal the audiotape of Sapcut's call to dispatch during the chase, wherein the siren can be heard. The defense objected, arguing that this would be cumulative of Sapcut's testimony and bolstering. The trial court overruled the objection on grounds that this was a factual matter in dispute, and permitted that portion of the tape to be played. Accordingly, the portion was played for the jury, wherein the siren was audible.

1. It is undisputed that Appellant had no prior opportunity to cross-examine Norfleet.

2. We note that *Melendez–Diaz* was decided on June 25, 2009. The trial of this case commenced March 15, 2010.

On appeal, Appellant contends that the playing of the tape amounted to improper "sandbagging" that prejudiced the credibility of Appellant with the jury. The trial court has broad discretion to determine the admissibility of rebuttal evidence, and its decision is reviewed under an abuse of discretion standard. RCr 9.42(e); *Clutter v. Commonwealth,* 322 S.W.3d 59, 65 (Ky.2010); *Chestnut v. Commonwealth,* 250 S.W.3d 288, 298 (Ky.2008). Under this standard, a trial court's ruling will not be disturbed unless "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

Sapcut testified, in the Commonwealth's case-in-chief, that he activated his blue lights and siren to pursue Appellant. At that point in the trial, the tape would have been cumulative. However, when Appellant denied hearing the siren, the tape became proper rebuttal evidence. *See Wickware v. Commonwealth,* 444 S.W.2d 272 (Ky.1969); *Watts v. Commonwealth,* 308 Ky. 197, 213 S.W.2d 795 (1948). Appellant makes no claim, for example, that the tape's existence was withheld in bad faith, *Davis v. Commonwealth,* 795 S.W.2d 942, 947 (Ky.1990); that it should have been introduced during the Commonwealth's case-in-chief instead of rebuttal, *Gilbert v. Commonwealth,* 633 S.W.2d 69 (Ky.1982); or that the evidence was untimely disclosed, *Clutter,* 322 S.W.3d at 65–66. We see no abuse of discretion.

### Costs

The final judgment imposed court costs of $155.00 and fines of $450. Appellant contends that the imposition of the court costs and fines was erroneous as he is indigent. The Commonwealth agrees. That portion of the judgment imposing court costs and fines upon Appellant is reversed.

In all other regards, the judgment of the Laurel Circuit Court is affirmed.

All sitting. All concur.