# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0312-MR

JAMES GENTRY                                        APPELLANT

V.                 ON APPEAL FROM TRIGG CIRCUIT COURT
HONORABLE C.A. WOODALL, III, JUDGE
NO. 19-CR-00014

COMMONWEALTH OF KENTUCKY                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

James William Gentry was convicted by a Trigg County Circuit Court jury of murder and first-degree robbery. He was sentenced to life imprisonment without parole for 25 years and appeals to this Court as a matter of right. KY. CONST. § 110(2)(b). Gentry raises six issues on appeal: (1) inadmissible hearsay was improperly used to bolster the Commonwealth's case; (2) the Commonwealth did not establish the foundational relevancy of the random firearm; (3) inadmissible hearsay deprived Gentry of a fair trial; (4) references to an unrelated robbery violated KRE[1] 404(b); (5) the trial court abused its discretion in refusing to have the Commonwealth's victim

---

[1] Kentucky Rules of Evidence.

representative testify first; and (6) cumulative error.  Finding no reversible error, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 28, 2018, Keith Jodell Hayes's body was found in a barn between a stack of hay bales.  Hayes had been shot in the head five times.  Hayes had last been seen on the morning of the prior day, November 27, when multiple witnesses—his mother, Dotty, his girlfriend, Michelle Kamely, and a drug business associate, Amber Burr—all testified Hayes had a planned meeting with Gentry.  Gentry had come earlier that same morning to Dotty's house to arrange the meeting.  The three witnesses all testified that Hayes took a ring or rings to the meeting to sell to Gentry.  Kamely also testified that Hayes took a gun with him.  Burr further testified that Hayes planned to meet her at the local child-support office after obtaining money from Gentry to help Burr pay off her child support arrearage.  That payoff never occurred.  And, after Hayes left his mother's house, Dotty was not able to contact him.

Through investigation, law enforcement determined that Gentry was the last person to be seen with Hayes.  When law enforcement interviewed Gentry, he ultimately admitted to being at the property where Hayes was shot, but denied being the shooter.  Law enforcement recovered Gentry's jacket seen on camera footage the day of the murder.  Gentry's jacket contained the same hay

2

found at the barn.[2]  A few months after the murder, law enforcement recovered a .38 caliber Taurus revolver from Lake Blythe, less than two miles from Gentry's home.  The firearm was reported stolen from a Hopkinsville residence located approximately one mile from Gentry's residence and was believed to be the same firearm used to kill Hayes.  The KSP report could not conclusively determine its bullets matched those recovered by Hayes's body, although they were consistent.

Gentry was interviewed by police five times, providing inconsistent statements and multiple versions of the November 27 events.[3]  Initially, he claimed that Hayes and he had planned to do yard work for a "Mrs. Gray" in Princeton, Kentucky.  Travelling in separate vehicles, Gentry noticed at some point that Hayes had "disappeared" and was no longer following Gentry.  Eventually, Gentry admitted to having had possession of Hayes's ring.  He claimed "AJ and Johnny Austin" came to his house and forced him to pawn it for them.  Law enforcement was able to recover the ring, which Gentry had pawned for $900.

After the first interview, law enforcement discovered that Gentry's uncle owned property near the farm where Hayes's body was found.  Upon a subsequent interview, Gentry claimed he had been apprehended, tied up and

---

[2] The hay was an unusual type for the area.  An expert, Dr. Timothy Phillips, testified that the hay at the barn was teff hay and it matched the hay found in Gentry's jacket.

[3] Gentry did not testify at trial.  All his statements and observations were presented to the jury by law enforcement officers from their interviews of Gentry.

placed in the trunk of a car. He then witnessed a drug-related meeting. He stated, "heavy hitters out of Arizona" pulled a gun and shot Hayes. These individuals then placed him back in the trunk and eventually dropped him off at "the Y." Gentry claimed, however, not to have been anywhere near the barn where the body was found.

When officers told Gentry they believed Hayes was killed where his body was found, Gentry's story changed again. In this version, Gentry had arranged his uncle's isolated residence as a meeting place. Hayes called one of two drug associates, James Love or another man, variously referred to as Tig, Cortez, Tic, or Tight, to inform them of the location. Gentry observed an escalating disagreement over drug money. Tig pulled a gun, then Love pulled his gun and fired at Hayes. The first shot missed, and then Gentry fled in a vehicle. In his rearview mirror, Gentry observed Hayes running away, pursued by Love and Tig, in the area of two barns. Gentry steadfastly denied ever going inside the barn where Hayes's body was discovered. Gentry said that while he knew Hayes never to leave the house without his .40, he did not see Hayes's gun on this occasion. Later, Tig and Love showed up at Gentry's house and forced him to take and pawn Hayes's rings. They did so to ensure Gentry's silence about the events. Gentry later changed his story about the rings, saying he had pawned one he took from Hayes's vehicle.

Gentry admitted that Hayes and he had discussed planning a robbery. This was to benefit Hayes since he needed quick money. The tentative plan was to rob a bar in Tennessee, although this robbery never occurred.

A Trigg County Grand Jury indicted Gentry of one count of murder – complicity, one count of first-degree robbery – complicity, and one count of possession of a handgun by a convicted felon – complicity. The possession of a handgun by a convicted felon charge was severed from the other charges before trial.

At trial, the Commonwealth's theory was Gentry lured Hayes to the barn to rob and kill him. Gentry presented an alternate perpetrator ("aaltperp") defense at trial. His claim was that he did not kill Hayes but witnessed Love or Tig kill Hayes during the drug deal. In support of his two-shooter theory, Gentry argued that no blood or gunshot residue existed on Gentry's jacket, Hayes had owed money to his drug suppliers, the two shooters had left cigarette butts at the barn, and Gentry did not drop off Hayes's truck at a church parking lot where it was later found.

The trial was held over four days in July 2021. On the scheduled fourth day of trial, pre-trial services reported that Gentry had disconnected his ankle monitor, and his whereabouts were unknown. Over Gentry's counsel's objection, the trial court ruled that Gentry had voluntarily absented himself from the trial and ordered the proceedings to continue. Following the conclusion of the trial, the jury returned a guilty verdict on murder and first-degree robbery. Following the jury's recommendation, the trial court sentenced Gentry to life imprisonment without parole for 25 years. Gentry now appeals his conviction to this Court as a matter of right.

5

## II. STANDARD OF REVIEW

The issues Gentry raises in this appeal all involve evidentiary issues. We review the trial court's evidentiary rulings under an abuse of discretion standard. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## III. ANALYSIS

Gentry argues several trial errors: (1) inadmissible hearsay was improperly used to bolster the Commonwealth's case; (2) the Commonwealth did not establish the foundational relevancy of the random firearm; (3) inadmissible hearsay deprived Gentry of a fair trial; (4) references to an unrelated robbery violated KRE 404(b); (5) the trial court abused its discretion in refusing to have the Commonwealth's victim representative testify first; and (6) cumulative error.

Gentry's first four issues are unpreserved. Because the issues are unpreserved, Gentry requests we review the issues for palpable error. RCr[4] 10.26. "Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is 'palpable' and *if* it 'affects the substantial rights of a party.'" *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013). "Even then, relief is appropriate only 'upon a determination that manifest injustice

---

[4] Kentucky Rules of Criminal Procedure.

6

resulted from the error.'" *Id.* (quoting RCr 10.26). "For an error to rise to the level of palpable, 'it must be easily perceptible, plain, obvious and readily noticeable.'" *Doneghy v. Commonwealth*, 410 S.W.3d 95, 106 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)). "A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings." *James v. Commonwealth*, 681 S.W.3d 60, 69 (Ky. 2023) (quoting *Davis v. Commonwealth*, 620 S.W.3d 16, 30 (Ky. 2021)).

### A. *No palpable error occurred during Det. Hamby's testimony.*

Gentry asserts multiple issues arose during Det. Hamby's testimony concerning the firearm, ballistics evidence, DNA evidence, and gunshot residue. We address these in turn.

#### 1. The firearm and ballistics evidence.

Gentry first argues palpable error occurred when Det. Hamby testified to the discovery, the collection, and the analysis of the firearm found in Lake Blythe. Det. Hamby testified that in February 2019 he was contacted by the Christian County Sheriff's Department and was advised a fisherman had found a Taurus .38 revolver in Lake Blythe, north of Hopkinsville. Upon recovery of the firearm, Det. Hamby saw that the serial numbers had been scratched off, but through an acid technique he was able to recover the serial numbers. Based off the serial numbers, Det. Hamby discovered the firearm was stolen and the owner lived in Hopkinsville, less than two miles from Gentry. Det. Hamby sent the firearm to the ballistics lab to determine whether the firearm was functional and to compare its bullets to those causing Hayes's injuries.

7

Det. Hamby testified that the ballistics examination results could not conclude whether the firearm's bullets matched those causing Hayes's injuries. However, he testified that the bullets from the .38 Taurus revolver were consistent with those recovered from Hayes's body.

Gentry argues that Det. Hamby's testimony about the ballistics examination violated the Confrontation Clause. "[I]f an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront the witness." *Bullcoming v. New Mexico,* 564 U.S. 647, 657 (2011) (citing *Crawford v. Washington,* 541 U.S. 36, 59 (2004)). Previously, this Court has held that the Confrontation Clause was violated when a "KSP lab report and its conclusions were admitted at trial in the absence of [the lab technician]." *Peters v. Commonwealth,* 345 S.W.3d 838, 841-43 (Ky. 2011). Following *Crawford* and *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009), we determined that, "[b]ecause the report is a testimonial statement, neither it, nor its contents, could be admitted at trial in the absence of the declarant[.]" *Peters,* 345 S.W.3d at 843. In this case, no evidence was presented at trial that the analyst for the ballistics examination was unavailable or that Gentry had the opportunity to cross examine the analyst. Gentry, thus, is correct that Det. Hamby's testimony on this issue was improper.

An error under *Crawford,* however, is subject to a harmless error analysis. *Staples v. Commonwealth,* 454 S.W.3d 803, 826 (Ky. 2014).

8

"Harmless error analysis applied to a constitutional error . . . involves considering the improper evidence in the context of the entire trial and asking whether there is a 'reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Id.* at 826-27 (quoting *Talbott v. Commonwealth*, 968 S.W.2d 76, 84 (Ky. 1998)).  However, when the error is unpreserved, "[a] party claiming palpable error must show a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Peters*, 345 S.W.3d at 843 (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)).  In *Peters*, we held that a similar error did not rise to the level of palpable error based on all the other evidence admitted.  *Id.* at 843.

During the four-day trial, the Commonwealth presented considerable evidence that Gentry murdered and robbed Hayes: Gentry had arranged a meeting with Hayes at a location known to Gentry; Gentry was the last person known to have seen Hayes; Hayes took a gun to the meeting and was killed by a gun similar in caliber to his own gun;[5] Gentry's jacket contained an unusual type of hay that was stored in the barn where Hayes's body was found; and Gentry had pawned Hayes's ring.  In addition, Gentry gave multiple inconsistent statements to police, including failure to tell about the "drug deal

---

[5] A more complete summary of this evidence is that Kamely testified that Hayes showed her his firearm on his person before he went to meet Gentry.  Burr testified that Hayes's firearm was stolen.  The firearm recovered from the lake was a stolen firearm.  Law enforcement did not find Hayes's firearm anywhere around the barn.  Burr testified that she was "fairly confident" that the firearm recovered from the lake was Hayes's firearm.

gone bad" in his first interview. The Commonwealth also disproved Gentry's two-shooter theory by excluding Love, one of the purported shooters. Love consented to DNA testing, law enforcement searched his truck, and, most significantly, performed an analysis of Love's cell phone which revealed Love was not in Trigg County at the time of the murder. Gentry had stated that Love and Tig were both smoking during the drug deal and had left cigarette butts at the scene. Law enforcement, however, only found one cigarette butt. Finally, Gentry claimed both Love and Tig had fired weapons at Hayes. Law enforcement only recovered six bullets at the scene: five recovered from Hayes's head and one partial bullet in a wooden rafter. This evidence was consistent with Hayes having been shot with a single revolver.

Considering all the evidence presented by the Commonwealth, Det. Hamby's testimony about the recovery of the firearm and ballistics examination showed no probability of a different result. No palpable error occurred from the Confrontation Clause violation.

### 2. The DNA evidence.

Det. Hamby testified that police collected one cigarette butt from the crime scene. When sent for testing, only Hayes's DNA was discovered. No one from the lab testified to the DNA results. Gentry argues palpable error occurred when Det. Hamby testified to the DNA results with respect to this cigarette butt.

As with the ballistics examination, allowing Det. Hamby to testify about the DNA test results also violated the Confrontation Clause. *See Peters*, 345

10

S.W.3d at 843 (admitting conclusions from lab report without the lab technician violated the Confrontation Clause).  No evidence was presented at trial that the analyst for the DNA test was unavailable or that Gentry had the opportunity to cross examine the analyst.

However, applying the same palpable error analysis above to the DNA test, this error still does not rise to a palpable error.  Gentry argued that Love and Tig were the ones who left that cigarette butt.  Det. Hamby testified that he obtained a DNA sample from Love, ran an analysis of Love's cell phone, searched his truck, and concluded that no evidence placed Love at the scene of Hayes's murder.  No other evidence presented at trial connected either Tig or Love to the scene.  Gentry cannot show a probability of a different result based on all evidence presented by the Commonwealth.  No palpable error occurred.

### 3. The gunshot residue testing.

As previously noted, Gentry's jacket observed on security camera footage had been seized by law enforcement pursuant to a search warrant.  Det. Hamby testified that he did not submit the jacket for gunshot residue testing, noting that gunshot residue testing is fickle and the state laboratory had indicated in the past that it would not perform gunshot residue tests under similar circumstances.  No one from the lab testified to the refusal to do gunshot residue testing of Gentry's jacket.  No report was generated for testing because the lab never tested Gentry's jacket.  Gentry argues this constitutes another Confrontation Clause violation and palpable error, because no one from the lab was available to be cross-examined and Det. Hamby provided the

11

testimony as to the efficacy of the gunshot residue testing. The Commonwealth argues no palpable error occurred because Hamby's testimony about the gunshot residue testing was not hearsay. We agree with the Commonwealth.

The statement was not hearsay because the statement was only offered to demonstrate why the officer took the action he did. *Chestnut v. Commonwealth*, 250 S.W.3d 288, 294 (Ky. 2008). Gentry was not denied his right to confront witnesses. Det. Hamby testified based on his prior experience with submitting gunshot residue testing to the lab. He testified that gunshot residue testing was fickle because it needs to be close in time to the crime and usually from the suspect's hands, not articles of clothing. Gentry's jacket was recovered three days after Hayes's body was found. Det. Hamby determined based on his prior experience, gunshot residue testing would not be able to pinpoint when, if any, residue got on the jacket. Det. Hamby's testimony about the gunshot residue testing was not hearsay, did not violate the Confrontation Clause, and was not palpable error.

### B. *Gentry waived his claim as to admission of the firearm.*

Gentry argues palpable error occurred because the Commonwealth did not lay a proper foundation for the firearm found in the lake three months after the murder. The Commonwealth argues that Gentry waived any claim of error in the admission of the firearm by not objecting to its admission at trial. The Commonwealth moved for the firearm to be admitted to the jury and the defense stated it had "no objection."

12

When "a party not only forfeits an error by failing to object to the admission of evidence, but specifically waives any objection, the party cannot complain on appeal that the court erroneously admitted that evidence." *Tackett v. Commonwealth*, 445 S.W.3d 20, 29 (Ky. 2014). In *Tackett*, the defense explicitly had no objection to the admission of a doctor's report, which stated that the defendant was the perpetrator. *Id.* This Court held that the defendant "explicitly waived any objection to the admission of that evidence, whether by way of the report or through [the doctor's] testimony about the report's contents." *Id.*

Gentry's explicit acquiescence to the admission of the firearm rendered the claim "not only unpreserved," but "specifically waived". *Id.* Accordingly, to the extent admission of the firearm was error, Gentry waived the error, and we need not address the issue further.

### C. *Admission of additional hearsay evidence was not palpable error.*

Gentry argues he was denied a fair trial because the trial court allowed additional inadmissible hearsay statements that devastated his two-shooter defense. Gentry points us to two statements: (1) Det. Hamby testified that someone told him a rumor that Troy Clark was driving Hayes's truck on November 27, 2018; and (2) Officer Leek testified that he overheard Hayes's brother, Mike Hayes, on speakerphone ask Gentry about his planned robbery with Hayes.

KRE 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

13

truth of the matter asserted." KRE 801(c). Hearsay is generally inadmissible unless it meets an exception. KRE 802. Both statements at issue were made by a declarant outside of trial. Gentry argues that both statements were offered to prove the truth of the matter asserted. Neither hearsay statement, however, resulted in palpable error.

### 1. Rumor about Troy Clark Driving Hayes's Truck

Gentry argues that one of the unanswered questions at trial was how Hayes's truck got from the crime scene to the church parking lot where it was found. Det. Hamby was questioned about the fact that his investigation uncovered an allegation that a man named Troy Clark was seen driving Hayes's truck on the day of the murder. Burr had testified that Clark was one of Hayes's drug suppliers. Gentry complains that Det. Hamby stated, "There was at one point a statement made about a man named Troy Clark driving the victim's truck. We were able to track down the source of that statement and he told us he never said that, so it was just a rumor that had gotten started." Gentry's argument is that this hearsay statement was introduced without testimony from the source of the "rumor" as proof that Clark was not driving Hayes's truck.

At trial, this testimony was presented on cross-examination when Gentry asked Det. Hamby the question that gave rise to the now objectionable response: "People also . . . told you they saw Troy Clark driving the . . . victim's truck, correct?" Gentry thus waived this error because his defense counsel invited Det. Hamby's answer. This Court has "long held, '[o]ne who asks

14

questions which call for an answer has waived any objection to the answer if it is responsive.'" *Sheets v. Commonwealth*, 495 S.W.3d 654, 669 (Ky. 2016) (quoting *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983)). Det. Hamby's answer was responsive to Gentry's question about Troy Clark driving Hayes's truck. Gentry invited the error and thus waived any objection.

### 2. Officer Leek's overheard conversation

Officer Leek's testimony about what Mike Hayes said on a phone call to Gentry that Officer Leek overheard by speaker phone was hearsay. His testimony was an out of court statement offered to prove the truth of the matter asserted that Gentry and Hayes had planned a robbery together and had planned to meet up to split the robbery proceeds. Mike Hayes had testified at trial on the day prior to Officer Leek and did not mention that Gentry had planned a robbery with Hayes. Although Officer Leek's testimony was hearsay, its admission does not rise to palpable error because Gentry admitted in an interview with law enforcement that he planned a robbery with Hayes, making the hearsay evidence duplicative and highly unlikely to have altered the outcome of the trial. No manifest injustice occurred by Officer Leek testifying to Mike Hayes's statement over speaker phone.

### D. The trial court properly admitted the robbery evidence.

Gentry argues the trial court erred in allowing KRE 404(b) evidence of Gentry committing another uncharged robbery, and this evidence was thus unduly prejudicial for the jury to hear. We disagree. Because the uncharged

robbery was part of the *res gestae* of how Gentry lured Hayes to the barn, it was properly admitted under KRE 404(b)(2).

Kamely testified that she overheard Gentry tell Hayes that "it's already done." The Commonwealth later argued that Gentry's statement referred to the uncharged robbery. Burr testified that Gentry was supposed to have $20,000 from a robbery and that Hayes told her he was going to meet with Gentry to get a share of the proceeds. Burr also testified that Hayes had a ring and a firearm with him that he was going to trade to Gentry in exchange for a bigger share of the robbery proceeds. Det. Hamby testified that during Gentry's last interview, Gentry admitted to planning a robbery of a liquor store. When Det. Hamby followed up on whether this robbery ever occurred, he found no record of it. In the Commonwealth's closing, it argued that the robbery Gentry and Hayes planned together was Gentry's opportunity to lure Hayes to the barn to kill and rob him of his possessions.

KRE 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1)    If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> >
> > (2)    If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

16

The Commonwealth argues that the robbery evidence was admissible alternatively under either subsection (1) or (2). We agree with the Commonwealth, but believe its stronger argument is under KRE 404(b)(2) in that the evidence of robbery was inextricably intertwined with other evidence essential and that separation of the two could not be accomplished. In *Major v. Commonwealth*, 177 S.W.3d 700, 708 (Ky. 2005) (quoting *Norton v. Commonwealth*, 890 S.W.2d 632, 638 (Ky. App. 1994)), we noted that "KRE 404(b)(2) is 'intended to be flexible enough to permit the prosecution to present a complete, un-fragmented, un-artificial picture of the crime committed by the defendant, including necessary context, background and perspective.'" Further, the rule permits "the Commonwealth . . . to present a complete and unfragmented picture of the circumstances surrounding how the crime was discovered." *Clark v. Commonwealth*, 267 S.W.3d 668, 681 (Ky. 2008).

As previously noted, the Commonwealth's theory of the case was that Gentry had lured Hayes to the barn under the pretense of either planning a future robbery for the benefit of Hayes, or of splitting money which were proceeds from an earlier robbery. The testimony as to events occurring and statements made on November 27 leading up to Hayes's murder were part and parcel as to why Hayes went to meet Gentry that day. That Gentry told Hayes the uncharged robbery was completed in order to get him to come to the barn was offered by the Commonwealth to prove that Gentry had the motive to rob Hayes at the barn. Gentry also told law enforcement that Hayes and he were planning a Tennessee robbery for Hayes's benefit. Det. Hamby testified that no

17

record of the robbery of the liquor store existed. However, multiple witnesses confirmed that Gentry and Hayes had planned to commit a robbery. The evidence of robbery is part of the *res gestae* of the Commonwealth's theory that Gentry lured Hayes to the barn on a false premise in order to shoot and rob him. *See Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012) (allowing evidence of other crimes where "the 'uncharged offense is "so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . . ." [and is thus] part of the res gestae of the crime charged[]'" (quoting *Norton*, 890 S.W.2d at 638)).

### E. The trial court did not err in allowing Dotty Hayes to be the Commonwealth's third witness.

Gentry argues the trial court abused its discretion in refusing to have the Commonwealth call Dotty Hayes as its first witness. He argues that allowing Dotty to be in the courtroom after KRE 615 was invoked was an error. Dotty was the victim's mother and her testimony was unrelated to the previous two witnesses. Gentry preserved this issue by objection and requests this Court review it for abuse of discretion. *See McAbee v. Chapman*, 504 S.W.3d 18, 31 (Ky. 2016) (applying abuse of discretion to the trial court's failure to sequester expert witnesses).

Gentry's counsel invoked KRE 615 before the Commonwealth's first witness. This Court has held that "KRE 615 requires the trial court to exclude trial witnesses, so that they cannot hear the testimony of other witnesses." *McAbee*, 504 S.W.3d at 24. "The purpose of the rule is to ensure that

18

witnesses do not alter their testimony based on the testimony of other witnesses." *Cavanaugh v. Commonwealth*, 671 S.W.3d 17, 20 (Ky. 2022) (citing *Hatfield v. Commonwealth*, 250 S.W.3d 590, 594 (Ky. 2008)). However, the rule has exceptions. KRE 615 states:

> This rule does not authorize exclusion of:
>> (1) A party who is a natural person;
>>
>> (2) An officer or employee of a party which is not a natural person designated as its representative by its attorney; or
>>
>> (3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

The Commonwealth argued that Det. Hamby met an exception to KRE 615 and it invoked Dotty's right to remain in the courtroom under Marsy's Law. KY. CONST. § 26A. This Court held that when dealing with KRE 615 and Marsy's law "the best course of action is for trial courts to have the victim testify first so that no question of improper influence on their testimony occurs." *Cavanaugh*, 671 S.W.3d at 21 n.3.[6] Nevertheless, KRE 611 grants the court reasonable control over the mode and order of interrogating witnesses and presenting evidence and *Cavanaugh* did not set forth a requirement that victims testify first in all circumstances. *Id.* (finding no error in allowing victim to testify after hearing other witness's testimony where she "was the only witness who testified to the events leading up to the assault and the assault itself[]"). Here, the trial court had Dotty, the victim's mother, testify third instead of first.

---

[6] The trial in this case was held prior to rendition of *Cavanaugh*'s addressing of best practices.

19

The Commonwealth called Mike Davis as its first witness, Deputy Randy Clark as its second witness, and then Dotty. Davis testified that he discovered Hayes's body on November 28, 2018, and that he stored hay in barns around Trigg County. Deputy Clark testified that he responded to the call about Hayes's body.

Dotty's testimony was unrelated to that of the first two witnesses because she discussed events that occurred before the discovery of Hayes's body. Dotty testified that Gentry came to her residence several times on November 27, 2018, and that Hayes left to meet up with Gentry. Dotty also testified to Hayes's relationship with Burr, his possession of the ring, and his financial status. Like *Cavanaugh*, no prejudice was caused by the trial court permitting Dotty to remain in the courtroom for the first two witnesses because her testimony could not have been altered by the testimony of Mike Davis and Deputy Clark. *Id.* at 21. The purpose of KRE 615 as it related to Gentry's constitutional rights was not frustrated by Dotty testifying as the third witness in this case for the same reason. The court did not abuse its discretion in allowing Dotty to be the Commonwealth's third witness.

### F. Cumulative error did not occur.

A criminal defendant "is guaranteed a fair trial[,]" but "[t]his does not mean, however, a perfect trial, free of any and all errors." *McDonald v. Commonwealth*, 554 S.W.2d 84, 86 (Ky. 1977). Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair."

20

*Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). "Where, as in this case, however, none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34, 53 (Ky. 2002)). Here, three errors occurred during trial: (1) Det. Hamby's testimony about the recovery of the firearm and ballistics examination; (2) Det. Hamby's testimony about the DNA evidence; and (3) Officer Leek's testimony about Mike Hayes's phone call with Gentry. However, considering all the evidence produced at trial, those errors, as noted, did not prejudice Gentry. The limited errors committed by the trial court did not render the trial fundamentally unfair.

## IV.    CONCLUSION

For the foregoing reasons, the Trigg Circuit Court's judgment is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General