Raza HASHMI, M.D., Appellant,

v.

Linda KELLY, Administratrix of the
Estate of Rosalie Stamper,
Appellee.

No. 2009–SC–000843–DG.

Supreme Court of Kentucky.

Sept. 20, 2012.

---

Steven Glenn Kinkel, John Christian Lewis, Fulkerson, Kinkel & Marrs, PLLC, Lexington, KY, Counsel for Appellant.

Kenneth L. Sales, Paul Jason Kelley, David G. Bryant, Sales, Tillman, Wallbaum, Catlett & Satterley, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

The Appellant and defendant below, Dr. Raza Hashmi, sought discretionary review of the Court of Appeals' decision in this case reversing and remanding to the trial court on the basis that the trial court misapplied CR 26. Because the error in this case is harmless, this Court reverses and reinstates the judgment of the trial court.

## I. Background

This is a medical malpractice claim for the wrongful death of Rosalie Stamper,[1] with the underlying facts being largely irrelevant to the single question on appeal. At issue is a discovery violation question about the use of deposition testimony of a treating physician, Dr. John Johnstone, who was originally a defendant in the case but was dismissed prior to trial. At trial, Appellant offered Dr. Johnstone's deposition testimony as expert testimony about the standard of care. Appellee had no-

ticed the deposition for discovery as the treating physician, but did ask the doctor in the course of the deposition whether he thought Appellant had violated the standard of care. Dr. Johnstone replied, "I think it was fine."

Dr. Johnstone's answer was preceded in the deposition by his explanation that he had not seen the Appellant's actual, detailed medical records, and did not have them in his possession. Instead, he had only reviewed a summary of Appellant's medical records that had been prepared by his attorney. Counsel for Appellee asked to see what the doctor had reviewed, but Dr. Johnstone's attorney refused to surrender the summary claiming it as attorney work product. Consequently, the attorney for Appellee had no basis to cross-examine the doctor on his opinion as to Appellant's standard of care, and simply made a clear record that the doctor had neither possessed nor seen Appellant's medical records. Additionally, counsel for Appellee did not ask what the relevant standard of care was, or whether Dr. Johnstone's statement was within reasonable medical probability. Counsel for Appellant asked no questions of the treating physician.

Indeed, since the deposition had been noticed for discovery by Appellee, it was reasonable for the doctor, as the treating physician, not to have prepared for a question about the standard of care relating to Appellant. Counsel for Dr. Johnstone thus agreed that if he were going to be called as an expert witness at trial, she would provide Appellant's medical records on the decedent to the doctor for review and supplement his opinion in discovery. Obviously, Dr. Johnstone could have been deposed again as well. Apparently, there

---

1. The suit was brought on behalf of Stamper's estate by the executor of that estate, who is the Appellee at this stage of the proceedings.

was never a request for review and supplementation.

However, the doctor was never specifically identified as an expert witness by Appellant going into trial. Appellee propounded interrogatories to Appellant under CR 26.02(4)[2] seeking the expert witness disclosure allowed by the rule. Initially, Appellant specifically identified four expert witnesses, and gave a brief summary of their expected testimony. Then he included the following answer: "Any and all other treating physicians of Rosalie Stamper." Appellee challenged three of these answers as inadequate, and one as dilatory, and moved the trial court to strike them.

The trial court gave Appellant until the end of November 2007 to fully comply with the order to provide adequate answers. Appellant then amended his disclosures to drop one expert, but retained the quoted general language. He never specifically named Dr. John Johnstone, nor did he give a summary of his expected testimony and the basis for it, despite having arguments about each of the listed experts at the hearing on the motion to strike. It was apparent that counsel for Appellee was seeking full CR 26 disclosure[3] on each expert expected to testify at trial.

Nonetheless, in his pre-trial-order compliance filed on February 12, 2008, Appellant listed Dr. Johnstone as a trial witness. Appellee had also listed Dr. Johnstone as a possible witness regarding the care and treatment of the decedent. But when trial began, it became apparent that Appellant intended to introduce Dr. Johnstone's testimony on the standard of care exercised by Appellant, which arguably required Appellant to have met the discovery requirements for expert witnesses.

During the trial, before Appellee's case was closed and before Appellant called any witnesses, Appellee filed a motion to exclude the standard of care testimony portion of Dr. Johnstone's deposition, making specific page and line objections, on two grounds: (1) Dr. Johnstone had not been identified as an expert witness and no CR 26 information had been provided about his testimony; and (2) the testimony in the deposition was not admissible as expert testimony because the question was asked for discovery only, a proper foundation was not laid for expert testimony by Appellant's counsel at the deposition, and the opinion was not based on a review of Appellant's treatment records of the decedent.

The trial court ruled that the objection had not been timely made under CR 30.02(4)(e),[4] overruled the motion, found that the spirit of CR 26 had been met even if its precise language had not, and allowed

**2.** CR 26.02(4) states, in pertinent part: "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." CR 26.02(4)(a)(i).

**3.** In addition to the general requirements for disclosure of expert testimony quoted in footnote 1, CR 26.02(4) provides additional rights to the party seeking information on proposed expert testimony, including the right to depose the proposed expert. CR 26.02(4)(a)(ii).

**4.** CR 30.02(4) concerns the procedure for taking video recorded depositions. Specifically, 30.02(4)(e) states, in pertinent part: "All objections will be reserved and shall not be stated on the video recording except for objections relating to the form of the question. Objections to testimony on the video recording will be resolved by agreement of counsel or ruling of the Court if counsel cannot agree. *All objections relating to said depositions must be made at least 10 days before trial.*" CR 30.02(4)(e) (emphasis added).

Dr. Johnstone's deposition to be played in its entirety to the jury, including the portion about Appellant's compliance with the standard of care. The jury returned a defense verdict, finding for Appellant, and the case was appealed to the Court of Appeals. That court reversed, simply finding that Dr. Hashmi had not complied with the language or spirit of CR 26.

This Court granted review to determine whether there is a conflict between CR 26 and CR 30.02(4)(e) in this case and whether the trial court abused its discretion by allowing Dr. Johnstone's deposition testimony on standard of care under the facts of this case.

## II. Analysis

■ A trial court's rulings on the application of the Rules of Civil Procedure and admissibility of evidence are reviewed for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577–78 (Ky.2000) (noting that abuse of discretion is the standard of review for a trial court's evidentiary rulings and that the same standard applies to KRE 702). In this case, the trial court abused its discretion by allowing Dr. Johnstone's testimony on the standard of care because it relied on the wrong rule of procedure and permitted the introduction of inadmissible evidence.

The Appellee focuses her argument on CR 26.02(4)(a), which allows a party to serve interrogatories to the opposing party asking for the identity of an expert witness to be called at trial, the subject matter on which he will testify, the substance of the facts and the expert's opinions, and a summary of the grounds for his opinions. In this case, the facts and the grounds upon which Dr. Johnstone relied were at issue because he had not reviewed Appellant's treatment records of the decedent. Moreover, he could not state specific grounds for his opinion that Appellant had not violated the standard of care other than his review of his attorney's summary and his long-term acquaintance with Appellant.

In fact, Appellant *did not* name Dr. Johnstone as an expert witness on either of his two expert lists, nor did he give *any* of the information required by CR 26 regarding Dr. Johnstone's expert opinion about the standard of care. Instead, he at best availed himself of a "catchall" phrase, "Any and all other treating physicians of Rosalie Stamper," in an attempt to include all possibilities. This is not a sufficient identification under the rule. Though commonly used in practice, such language is so broad as to be meaningless. There is certainly no specific statement that the "treating" physicians would be testifying to the proper standard of care or whether the Appellant had complied with it. No obvious or even clear inference can be drawn from the answer as to what the physician would testify about, though the most logical assumption would be testimony about their *treatment* of the decedent, meaning that the statement failed to provide even constructive notice of the elements required by CR 26.

Such language can in no way serve the intent of CR 26.02(4). The language of the rule places the burden of the rule's disclosure requirements on the party offering the expert witness, and this cannot be shifted to the opposing party by resort to vague or general language. This language provides no safe harbor.

■ Appellant, and the trial court, shifted the burden nonetheless by focusing on the fact that Appellee had taken the deposition and asked the question. But the deposition had been noticed for *discovery*, not for preservation of testimony at trial.

And while CR 32.01[5] does provide that "any part or all of a deposition" of a physician "may be used ... for any purpose," that language is limited to use of testimony "admissible under the rules of evidence as though the witness were then present and testifying." Though the rule conditions use of the deposition on admissibility under the "rules of evidence," there is little doubt that this contemplates compliance with any Civil Rule that might have some bearing on admissibility of evidence, such as CR 24. The crux of CR 32.01 is to allow liberal use of certain depositions, such as those of physicians, but only under conditions like those that would exist if the deponent testified live at the trial. In other words, CR 32.01's allowance of the use of the deposition for "any purpose" is not expansive and cannot justify the admission of testimony that could not be admitted through a live witness. Thus, if a Civil Rule would bar a witness from giving certain testimony live at trial, that same rule would bar the testimony from coming in via a deposition.

Dr. Johnstone's deposition was taken by oral examination under CR 30. That rule, which addresses video depositions, requires at CR 30.02(4)(e) that all objections to testimony be reserved except as to the form of the question. If there are objections to the testimony, counsel are directed to resolve them among themselves first if possible. Here, this first step was not even attempted because the Appellee had no notice until opening statements were about to begin at trial that Appellant intended to use Dr. Johnstone's deposition as expert testimony.

While both sides had Dr. Johnstone on their witness lists, he was only a potential witness on each list, and then presumably only as to his treatment of the decedent. Both counsel were aware that Dr. Johnstone had not reviewed Appellant's treatment records of the decedent and had committed to do so if called as an expert witness on the standard of care. By the Appellant failing to properly list him as an expert witness, Appellee was led to reasonably rely on that fact, and had no reason to approach Appellant about resolving any objection before trial. That Appellee would object to use of the doctor's deposition as an expert witness was abundantly clear by her repeated efforts to establish that the doctor had not reviewed Appellant's records.

Under CR 30.02(4)(e), the parties are only to file written objections ten days prior to trial if the objection cannot be resolved among the attorneys. The Appellant's failure to identify Dr. Johnstone as an expert witness in answers to interrogatories as required by CR 26.02(4) thus resulted in neither party having a reason to approach opposing counsel to resolve objections, since nothing of an "expert" nature in the deposition appeared to be on either party's witness list. Not having

---

5. CR 32.01 states, in pertinent part:
   At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof in accordance with any of the following provisions:
   . . .

   (c) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds the witness: ... (vi) is a practicing physician, dentist, chiropractor, osteopath, podiatrist or lawyer; ... or (xii) if the court finds that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

consulted about objections, neither party had a reason to consider the ten-day period on objections. Both parties' witness lists merely list Dr. Johnstone as a witness.

Also, CR 30.02(4)(e) is a *convenience* procedural rule rather than a substantive one. Its purpose is to avoid delay at trial while video testimony is being edited. CR 32.02 is a much more substantive rule dealing with the use of depositions at trial.

CR 32.02 provides that objections may be made *at the trial or hearing* on the whole or any part of a deposition for "any reason" which would require the exclusion of the evidence. And, as noted above, CR 32.01 conditions use of a deposition on the testimony in it being admissible as though the deponent were testifying at trial. Multiple reasons for the exclusion of Dr. Johnstone's testimony as to the standard of care exercised by Appellant are present here. First, Dr. Johnstone was not identified as an expert witness, thus precluding pretrial resolution of any objections, which was fundamentally unfair to the Appellee. Second, he was not properly qualified as an expert witness, and essentially admitted such during his deposition. If he testified live and had not been qualified as an expert, the expert aspect of his testimony would clearly be inadmissible. It is also inadmissible by way of a deposition used at trial. Third, Appellant *knew* Dr. Johnstone had not reviewed the underlying medical records, and in the discovery deposition Dr. Johnstone was not even asked to articulate what the appropriate standard of care was. Fourth, the standard of care testimony was purely cumulative, and was essentially "piling on."

Once alerted to Appellant's intended use for Dr. Johnstone's deposition, Appellee did exactly what CR 32.02 allows: she filed a motion and specific objections to admitting the standard of care portion of Dr. Johnstone's deposition into evidence. The trial court overruled the motion as untimely under CR 30.02(4)(e).

The trial court was in error when it failed to consider the effect of the requirements of CR 26 on the objecting party's ability to perform under CR 30.02(4)(e), and in its failure to consider the admissibility of the proposed "expert" testimony as to standard of care. It is obvious that Dr. Johnstone had no direct knowledge of Appellant's treatment history of the decedent, and thus knew nothing relevant to the facts of this case upon which to base a standard-of-care opinion. In the absence of such a basic foundation to show his competency as an expert witness, not even a *Daubert* hearing was necessary. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (establishing the trial court judge's role as "gatekeeper" as to credibility); *see also In re Scrap Metal Antitrust Litigation,* 527 F.3d 517, 532 (6th Cir.2008) (failing to find an abuse of discretion by trial court in denying a *Daubert* hearing because the record on the expert testimony was extensive and briefed).

The rules of discovery and use of depositions are not intended to foster the introduction of incompetent evidence or to encourage gamesmanship, which both sides decry here. One of the bedrock principles expressed throughout the rules is fair notice and opportunity to be heard, which would be undermined by the trial court's elevation of the 10–day limitation period in CR 30.02 over the procedural guarantees in CR 32.02. Regardless of either party's perspective, a fair reading of the civil rules does not work an undue hardship on any party.

■ CR 32.02 provides a fair opportunity to be heard, even at trial, if the admissi-

bility of evidence is questioned. CR 30.02(4)(e) also provides a fair opportunity to be heard through its requirement that objections to recorded depositions must be made ten days prior to trial to allow for video editing, under normal circumstances where the parties have the opportunity to resolve objections prior to that ten-day period. When the facts of a case do not allow that time frame, however, the rule obviously cannot apply.

It is certainly possible, as here, not to know with sufficient clarity what will be offered into evidence until the trial actually occurs. Witness lists state potential witnesses, and litigants remain free not to call everyone they have listed. And in many situations, a witness will have to appear by way of a video deposition. But in such situations, the trial court must exercise its discretion to ensure that only properly admissible evidence comes in, even when objections to video depositions were not timely made. A rule designed for convenience should rarely trump a rule designed to ensure only admissible evidence is presented to the jury.

The facts of this case do not support a finding that there was any undue prejudice in allowing Appellee to object at trial about the admissibility of Dr. Johnstone's standard of care evidence. Absent such a finding, the trial court abused its discretion when it applied CR 30.02(4)(e) to bar Appellee's objections to Appellant's use of Dr. Johnstone's answers to questions in his discovery deposition about whether Appellant observed the standard of care.

Further, CR 26.02 requires notice as set forth in the rule when a witness is offered as an expert. This notice is not merely pro forma but, as this case illustrates, serves the purpose of putting the opposing party on notice of procedural rules that should be followed and allows a party to prepare to handle the witness as an expert

rather than as a lay witness. The lack of such notice here led to Appellee having a reasonable basis for not complying with the 10–day requirement of CR 30.02, especially since her objection concerned the admissibility of the evidence on competency grounds.

■ The existence of an error alone, however, does not necessarily require reversal, as this Court is bound to review the error for possible harmlessness. *See* CR 61.01. In the final analysis, this Court cannot say that Dr. Johnstone's testimony about the Appellant's observance of the standard of care was unduly prejudicial. The Appellee really complains of only a single, five-word sentence that contains at best a vague opinion going to the standard of care. Given the fully developed testimony of Dr. Hashmi's disclosed expert witnesses on the standard of care, Dr. Johnstone's single statement was merely cumulative. Moreover, Appellee's own experts testified about the standard of care, which further reduced any possible effect from Dr. Johnstone's testimony. Additionally, Dr. Johnstone's statement "I think it was fine" was not exactly a ringing endorsement of Dr. Hashmi's conduct given that he did not even express that opinion as being within reasonable medical probability. And the deposition testimony did make clear that Dr. Johnstone had not reviewed Dr. Hashmi's treatment records of the decedent, thus bringing his actual knowledge into question, which counsel for Appellee was able to argue at trial.

Ultimately, this was an eight-day trial, about which the Appellee complains only of a single five-word sentence. Such an isolated remark, especially when balanced against more fully developed testimony from other experts, can have little if any prejudicial effect. If Dr. Johnstone had made more than this innocuous statement—for example, by giving more sub-

stantive or explicit testimony—then this case might have presented a different story. But in light of what actually occurred here—a vague, isolated statement improperly admitted in a case with substantial other proper expert proof (on both sides)—this Court cannot say the error was prejudicial or had any real effect on the verdict. *Cf. Winstead v. Commonwealth,* 283 S.W.3d 678, 688–89 (Ky.2009) (holding that the standard for non-constitutional evidentiary harmless error even in criminal cases is whether "the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error."). Thus, although the trial court's abuse of discretion introduced error into the case, this Court determines that such error was harmless under CR 61.01.

### III. Conclusion

For these reasons, the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER and VENTERS, JJ., concur. SCOTT, J., concurs in part and dissents in part by separate opinion.

SCOTT, J., concurring in part and dissenting in part:

Although I join the majority in holding that the trial court erred in admitting Dr. Johnstone's testimony, I must respectfully dissent from their conclusion that the error was harmless. I say this because *I cannot say* that the jury's verdict was not swayed by the error due to Dr. Johnstone's position as Rosalie Stamper's treating physician—specifically given the con-

tent of his testimony. *See Winstead,* 283 S.W.3d at 689 (quoting *Kotteakos v. U.S.,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (When determining whether a trial court's error was harmless, "[t]he inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' ").

Dr. Johnstone, who had previously been named as a defendant in this case (but was later voluntarily dismissed with prejudice), was, by Dr. Hashmi's own admission, an important witness, as one of Stamper's treating cardiologists. Although Dr. Hashmi failed to disclose him as an expert, his taped deposition was submitted into evidence over Appellee's objections.

During his deposition, Dr. Johnstone testified as to the standard of care and causation. Thus, after reviewing a summary of Dr. Hashmi's treatment, Dr. Johnstone testified that Dr. Hashmi's standard of care "was fine." In regard to how Stamper's condition was monitored, he stated that Dr. Hashmi acted appropriately when ordering further testing after symptoms of a potential pulmonary problem developed.

As to what caused Stamper's death, Dr. Johnstone testified that before being prescribed the drug, Stamper had interstitial changes in her lungs due to congestive heart failure. Moreover, he testified that Stamper had a history of not following the advice of her doctors and refused the best available method of treatment for her heart condition.[6] He also testified regarding Dr. Hashmi's general reputation as

---

6. An AICD, or automated implantable cardioverter-defibrillator, is a device implanted into a patient in order to control an abnormal heart rhythm. Dr. Hashmi testified that

Stamper's decision to forgo an AICD implantation necessitated her continued use of Amiodarone to control her abnormal heart rate.

well, stating that, after having known him for several years, he thought of him as an "excellent cardiologist."

Given Dr. Johnstone's status as Stamper's treating physician, and the jury's perception of this unique status, along with the extremely prejudicial nature of his testimony, I must disagree with the majority's conclusion that the error was harmless. Juries have been influenced by much less. Accordingly, I would remand the case for a new trial.