RENDERED:  JUNE 18, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1090-MR

THOMAS MAGINNIS                                                        APPELLANT


v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE GINA KAY CALVERT, JUDGE
ACTION NO. 17-CI-500728


NINAMARY MAGINNIS                                                        APPELLEE


OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:   Thomas Maginnis appeals from the property division

and maintenance determinations made by the Jefferson Family Court in its order

which contained findings of fact, conclusions of law, and the decree dissolving his

marriage to Ninamary Maginnis.  We vacate the valuation of a marital business,

which means we must also vacate the maintenance award.

Thomas and Ninamary were married in 1986 and separated in 2017.

At the time of the trial in 2019, Ninamary was 62 and Thomas 58, and they had no

minor children. Ninamary was admitted to practice law in 1998 and worked in the legal field until being diagnosed with leukemia in 2014. Though she maintained her law license, she was declared totally disabled by the Social Security Administration in 2017. Thomas has a high school diploma and had taken some college courses.

In 1994, the parties started a business called Chimney Master. Thomas performed the manual labor as a chimney sweep and Ninamary performed some other tasks, such as bookkeeping. At the time of trial, Chimney Master had one other employee.

As it pertains to this appeal, the main issues remaining for resolution at trial were valuing Chimney Master and determining whether Ninamary was entitled to maintenance (and, if so, in what amount and for what duration). In conjunction with this dispute, the parties wished to rely on valuation testimony by expert witnesses.

On December 17, 2017, Ninamary served interrogatories on Thomas that included a request for disclosure of any expert witnesses in accordance with the Kentucky Rules of Civil Procedure (CR) 26.02(4)(a)(i).

Ninamary's expert testimony disclosure was filed on January 29, 2018, and stated that she would call Chris Johnson, a certified public accountant (CPA), to testify during a February 8, 2018 hearing and may continue his

testimony at a future trial for final adjudication. At that time, Ninamary disclosed Johnson's curriculum vitae (CV) and that he would testify as to the financial standing and earning potential of Chimney Master based on his analysis of the business and financial records from 2015 and 2016, the business's well-being, and current earnings potential. Johnson was expected to testify that Thomas has the ability to earn a gross income of $13,000 to $15,000 per year, Chimney Master is a going concern with excellent future income potential but that he believed that not all invoice amounts for those years are accounted for in the operating bank account, totaling $45,000.

Although Johnson apparently prepared a report valuing Chimney Master dated January 1, 2018, it is unclear when Ninamary produced this report for Thomas. On June 7, 2018, Thomas requested a continuance of the trial on several bases including that Ninamary had disclosed to him that she had obtained an expert to value the business but had failed to provide a copy of the valuation and credentials. Thomas's motion for a continuance was granted, with the family court indicating it would not reschedule the trial until the parties indicated they were ready.

In a hearing order filed on November 21, 2018, the family court scheduled the trial for February 26, 2019, and ordered the parties to file a list of the

witnesses they intended to call for trial no later than noon on February 16, 2019. The parties continued to engage in discovery up until shortly before trial.

On February 15, 2019, Thomas filed his hearing memorandum which disclosed his witnesses and separately filed expert testimony disclosures for two witnesses. As for the expert testimony disclosure for CPA Melissa DeArk, Thomas stated she would provide expert testimony concerning her analysis of the business valuation of Chimney Master prepared by Johnson and listed the documents she was expected to rely on including the parties' federal tax returns and Johnson's report, and provided her CV. This disclosure did not clarify what DeArk's opinion was of Johnson's valuation or his methodology, or what the basis for such an opinion would be.

On February 18, 2019, past the deadline set by the family court, Ninamary filed her hearing memorandum listing her witnesses, including expert witness Johnson.

The trial proceeded as scheduled on February 26, 2019. Ninamary called Johnson to testify as to the value of Chimney Master. Johnson's testimony was largely consistent with his written report but differed in one important respect regarding the "enterprise value" as opposed to the "total value" of Chimney Master. In Johnson's written report he concluded Chimney Master's "enterprise value" was $284,141 but in his testimony he concluded Chimney Master's "total

value" was $284,414.[1]  In Johnson's testimony and in his written report, he consistently stated that 70% of Chimney Master's value was personal goodwill (deemed "personal attributes" in the report) and 30% was enterprise goodwill (deemed "enterprise attributes" in the report).  However, during his testimony he clarified that the 30% "enterprise value" of Chimney Master calculated out to about $85,000 of the total value of $284,414.

Thomas attempted to call DeArk, as a "rebuttal expert."  Before DeArk offered any substantive testimony, Ninamary objected, and a lengthy bench conference ensued.  Ninamary's counsel stated that Thomas failed to disclose DeArk as an expert witness and provide her opinion in response to interrogatories and his disclosure of her as a witness for trial had "vaguely" provided the subject matter of DeArk's opinion but not the opinion itself, so Ninamary could not effectively cross-examine DeArk.  We note that while Ninamary deposed other witnesses after DeArk was disclosed, she made no attempt to depose DeArk.

Thomas responded that DeArk would be testifying as a rebuttal witness about whether Johnson's report was done properly, without placing an overall value on Chimney Master of her own, and was not truly functioning as an expert witness.  Thomas also argued expert rebuttal witnesses are exempt from the

---

[1] The valuation was sometimes expressed as $284,141 and sometimes as $284,414; the first figure appeared in the conclusion of Johnson's report.

usual disclosure obligations. The family court found Thomas's disclosure did not give Ninamary "any idea" of DeArk's planned testimony and, consequently, refused to permit DeArk to testify as an expert.

In its post-trial order, the family court divided the marital property. In doing so, the family court adopted Johnson's $284,141 valuation of Chimney Master, awarded Chimney Master to Thomas and ordered Thomas to pay Ninamary half its value, $142,070. The family court properly noted that "transferable goodwill" was a factor in determining a business's value, but it nonetheless did not make any findings regarding Chimney Master's goodwill. The family court stated it excluded DeArk from testifying because Thomas "did not disclose" her.

As to maintenance, the family court found Ninamary to be permanently disabled and to have a monthly income of $2,007. The family court found that Thomas's tax returns did not completely reflect his income because of testimony asserting that he received cash payments for Chimney Master that he did not report. The family court also stated that Thomas admitted he kept a safe full of cash in a domestic violence companion case. The family court found Thomas's average gross income to be $160,308, based upon Chimney Master invoices for three recent years. Without explaining its calculations or their supporting evidentiary basis, the family court then determined Thomas's "average net pay" to

-6-

be $109,440 annually. Ultimately, the family court awarded Ninamary $3,300 per month in maintenance until she remarries, cohabits, or dies.

Both Ninamary and Thomas moved under CR 59.05 to alter, amend, or vacate. In relevant part, Thomas argued the family court erred by excluding DeArk's testimony and by stating that she had not been disclosed. Thomas also argued the family court erred by not addressing personal or enterprise goodwill in valuing Chimney Master, as Johnson had provided unrebutted goodwill evidence. Thomas also argued it was improper for the family court to rely on testimony from the domestic violence case to conclude that he had a "safe full of cash." In addition, Thomas argued his net annual income was only $44,945, but he did not specifically argue that the family court failed to explain how it arrived at its far different calculation for his net income. Finally, Thomas contended the $3,300 monthly maintenance award was unconscionable.

In its order denying Thomas's CR 59.05 arguments, the family court recognized Thomas had listed DeArk as a rebuttal witness but nonetheless denied relief because "[a] generalized statement outlining a broad subject matter about which an expert *may* testify does not sufficiently apprise the other party of the information needed to prepare for trial as contemplated and mandated by the notice requirements of CR 26.02(4)(a)." As to the goodwill component of valuing Chimney Master, the family court held:

-7-

> A party claiming property acquired during the marriage is nonmarital, pursuant to § KRS 403.190(2), bears the burden of proof. No evidence was presented to indicate that a chimney sweep generates personal goodwill in the same way as a doctor, lawyer, or other person in a relationship of trust with a patient or client, and no expert testimony was introduced to place a value on such personal goodwill, which would be non-marital property. It was not the Court's burden to make that argument or to generate speculative dollar figures on behalf of [Thomas].

(Citation omitted.)

The family court also declined to strike its reliance upon Thomas's statement about keeping a safe with cash in the DVO action because "[t]he Court is entitled to take judicial notice of public records such as the DVO proceedings, and certainly of public records created in front of the Court, between the same two Parties" and "[Ninamary's] testimony and the recording of [Thomas] admitted during the trial provided ample evidence to determine that [Thomas] keeps a safe full of cash." Thomas then filed this appeal.

Thomas's first main argument is that the family court erred by refusing to permit DeArk to testify. "In reviewing the trial court's ruling on the admissibility of expert testimony, we apply the abuse of discretion standard." *Burton v. CSX Transp., Inc.*, 269 S.W.3d 1, 6 (Ky. 2008). That standard also applies to our review of a trial court's decision regarding the admissibility of rebuttal evidence. *Clutter v. Commonwealth*, 322 S.W.3d 59, 65 (Ky. 2010).

-8-

CR 26.02(4)(a)(i) provides as follows:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

CR 26.05(a)(ii) clarifies:

> A party is under a duty seasonably to supplement his response [to a request for discovery] with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

Ninamary previously sent Thomas discovery requests including an interrogatory asking him to identify any expert witness and to provide the "subject matter on which the expert is expected to testify; . . . [t]he substance of the facts and the opinions about which the expert is expected to testify, and [a] summary of the grounds for each opinion." This was a proper request pursuant to CR 26.02(4)(a)(i), which required Thomas to supplement his response pursuant to CR 26.05(a)(ii) once he formed the expectation that he would call DeArk at trial. While, arguably, that might not have been until Thomas submitted her name as a potential witness, at that time he still needed to comply with the discovery request regarding disclosure.

An expert witness disclosure "is not merely pro forma but . . . serves the purpose of putting the opposing party on notice of procedural rules that should be followed and allows a party to prepare to handle the witness as an expert rather than as a lay witness." *Hashmi v. Kelly*, 379 S.W.3d 108, 114 (Ky. 2012). "[V]ague or general language" in a disclosure is insufficient. *Id.* at 111. "A generalized statement outlining a broad subject matter about which an expert *may* testify does not sufficiently apprise the other party of the information needed to prepare for trial as contemplated and mandated by the notice requirements of CR 26.02(4)(a)" because "[t]he discovery of the substance of an expert witness's expected testimony is essential to trial preparation." *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393-94 (Ky.App. 2004).

We agree with Thomas that the family court erred in its provided reasoning for DeArk's exclusion, that she had not been disclosed as a witness, which was clearly contradicted by the record. However, the family court corrected this faulty reasoning in its subsequent order regarding the motions to alter, amend, or vacate by clarifying that Thomas's prior disclosure of DeArk, which essentially stated only that DeArk would offer unspecified testify about Johnson's report and about Ninamary's marital claims, was insufficient. Given that order, we discern no abuse of discretion here.

Additionally, we are faced with an "insurmountable difficulty in that no avowal was made as to what the witness would testify. Such failure prevents us from judicially determining the propriety of the trial court's action." *Houser v. Coursey*, 310 Ky. 625, 221 S.W.2d 432, 434 (1949). We must have more information to determine how excluding DeArk prejudiced Thomas. *See Bayless v. Boyer*, 180 S.W.3d 439, 447 (Ky. 2005).

Alternately, Thomas argues "rebuttal experts" are exempt from the requirements of CR 26.02. The plain language of the rule does not contain any type of lesser requirements for disclosures of rebuttal experts.[2]

While more leeway is given in presenting rebuttal witnesses when a witness makes a disclosure on the stand which could not have been previously anticipated, this is not the situation before us where Johnson's report was available. *Compare with Morrow v. Stivers*, 836 S.W.2d 424, 430 (Ky.App. 1992).

In sum, because DeArk would have been testifying as an expert, Thomas had a duty under CR 26.02(4)(a)(i) to provide the "subject matter on which [DeArk] is expected to testify, and to state the substance of the facts and

---

[2] We note that even under the Federal Rules of Civil Procedure (Fed. R. Civ. P.) 26(a)(2)(D)(ii), which provides that witnesses "intended solely to contradict or rebut evidence on the same subject matter identified by another party" need not be disclosed until within thirty days of the other party's disclosure, does not exempt them from other disclosure requirements. Even if a party is exempted from providing such expert's written report, the party must still disclose "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii).

opinions to which [DeArk] is expected to testify and a summary of the grounds for each opinion." He failed to make an adequate disclosure when he named her as a witness which would apprise Ninamary about DeArk's probable testimony.

Thomas's next argument is that the family court's valuation of Chimney Master is fatally flawed because it ignores the analysis in Johnson's report and testimony that 30% of Chimney Master's value was due to enterprise goodwill, a marital asset, and 70% of Chimney Master's value was due to personal goodwill, a nonmarital asset. Pursuant to *Gaskill v. Robbins*, 282 S.W.3d 306 (Ky. 2009), there is a distinction between enterprise goodwill, which is a marital asset and can be divided in a dissolution, and personal goodwill, which is nonmarital. We agree with Thomas that the judgment must be vacated on this basis.

"The valuation of a business is complicated, often speculative or assumptive, and at best subjective . . . . Nonetheless, when a business is established during a marriage and is thus marital property, the trial court is required to fix a value and divide it between the spouses." *Id.* at 311 (paragraph break omitted). As it pertains to this case, quoting approvingly from *Yoon v. Yoon,* 711 N.E.2d 1265, 1268-70 (Ind. 1999) (citations and quotation marks omitted), *Gaskill* instructed family courts to allocate personal and enterprise goodwill when valuing and dividing a business:

> Goodwill in a professional practice may be attributable to
> the business enterprise itself by virtue of its existing

-12-

arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. It may also be attributable to the individual owner's personal skill, training or reputation. This distinction is sometimes reflected in the use of the term "enterprise goodwill," as opposed to "personal goodwill."

Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers. . . . Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. . . .

In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible. . . .

. . . .

In sum, to the extent a business or profession has goodwill (or has a value in excess of its net assets) it is a factual issue to what extent, if any, that goodwill is personal to the owner or employee and to what extent it is enterprise goodwill and therefore divisible property.

*Gaskill*, 282 S.W.3d at 314.

*Gaskill* does not explicitly state that all business valuations henceforth

must contain an enterprise versus personal goodwill analysis. Nonetheless, we

reject Ninamary's argument that the goodwill analysis in *Gaskill* was not

-13-

mandatory here.  First, as *Gaskill* recognized, Kentucky law had already recognized that "goodwill is a factor to be considered in arriving at the value of a business[.]"  *Id.* at 312.  Second, the family court in *Gaskill* did not engage in an enterprise versus personal goodwill analysis in dividing the medical practice– indeed, there was no Kentucky law at the time authorizing it to do so. Nonetheless, our Supreme Court found the family court erred by failing to conduct that analysis, explaining:  "If the value of goodwill can be reasonably determined at all, the amount of enterprise goodwill, which is all that can be considered as marital property, can be determined.  Therefore the trial court erred in failing to consider personal and enterprise goodwill."  *Id.* at 315 (paragraph break omitted). If it was error to not conduct an analysis which was not authorized under Kentucky law, it must be error to fail to conduct the analysis after the law has been settled.

Ninamary also argues that *Gaskill* is inapplicable here because it dealt with valuing a professional business, unlike Chimney Master.  Ninamary's argument places her in the unusual position of asking us to affirm the family court's decision to ignore her own expert's unrebutted testimony.  Unfortunately, the parties have not cited, nor have we independently located, any binding authority definitively addressing whether *Gaskill* applies to valuing professional and nonprofessional business entities alike.

However, there is no explicit indication in *Gaskill* that it was intended to only apply to valuing professional businesses. Indeed, the Indiana Supreme Court's decision in *Yoon*, which our Supreme Court quoted at length and deemed "compelling" *repeatedly* refers to valuing "a business or practice" or "a self-employed business or professional practice" or "a business or profession[.]" *Gaskill*, 282 S.W.3d at 313-14 (quoting *Yoon*, 711 N.E.2d at 1268-70). Moreover, the practical effect of Ninamary's argument would be to permit family courts to ignore goodwill testimony when valuing nonprofessional businesses.

*Rabe v. Rabe*, No. 2011-CA-001972-MR, 2015 WL 3505232 (Ky.App. May 29, 2015) (unpublished), discussed by the parties, is—in addition to being unpublished and therefore not binding—materially distinguishable. Unlike the case at hand, in *Rabe* "no testimony was offered suggesting that any of the business's goodwill was personal." *Id.* at *3. When valuing a business, ignoring unrebutted goodwill evidence is not the same as failing to *sua sponte* create and assign personal goodwill to a business. In short, though the issue may more often arise when valuing a professional entity, we conclude *Gaskill* also applies to valuing nonprofessional entities.

We are left here with the question of whether the family court erred by accepting Johnson's overall valuation while ignoring his component conclusion that only thirty percent of its value is marital (enterprise goodwill). Precedent has

-15-

long held that a family court's valuation will be affirmed if it "reasonably approximated the [entity's] net value[,]" *Clark v. Clark*, 782 S.W.2d 56, 59 (Ky.App. 1990), and falls "within the range of the competent testimony[,]" *Roberts v. Roberts*, 587 S.W.2d 281, 283 (Ky.App. 1979).

A finder of fact does not have to accept blindly the valuation testimony and conclusions of an expert, even if they are unrebutted. *Cf.* 31A AM. JUR. 2D *Expert and Opinion Evidence* § 245 (2021). However, the finder of fact must provide a legitimate explanation for rejecting uncontradicted evidence or it will be reversed as acting in an arbitrary and unsupported manner. *Kroger Limited Partnership I v. Boyle County Property Valuation Administrator*, 610 S.W.3d 332, 338 (Ky.App. 2020).

The family court incorrectly indicated there was no goodwill evidence for it to consider and justified its division based on this faulty understanding of the evidence. The family court cannot be deemed to have reasonably approximated the marital value of Chimney Master when it failed to address unrebutted evidence of the entity's enterprise versus personal goodwill. Ignoring Johnson's goodwill conclusions led to a roughly $200,000 increase in the marital portion of Chimney Master's value. Therefore, we vacate the family court's valuation of Chimney Master and remand with instructions to address Johnson's goodwill conclusions by either: (1) accepting them and apportioning the value of Chimney Master in

accordance therewith, or (2) rejecting them, and providing a sufficient explanation for so doing.

Thomas's final main argument is that the family court erred in awarding maintenance to Ninamary. Thomas notes that in failing to properly divide Chimney Master and treating its value as entirely marital that the family court was committing the very error warned about in *Gaskill*, that "attach[ing] [his] future earnings [from his personal goodwill]" and "then award[ing] maintenance [to Ninamary] . . . would amount to 'double dipping' and cause a dual inequity to [Thomas]." *Gaskill*, 282 S.W.3d at 315.

As a matter of course, we must vacate the maintenance award as it is dependent upon a proper antecedent property allocation. *Jones v. Jones*, 245 S.W.3d 815, 820 (Ky.App. 2008). However, we note that Thomas's argument about the combined inequity of the current award to Ninamary of half of the business's value without excluding the personal goodwill which is Thomas's individual property and awarding maintenance based on what he earns through performing manual labor for Chimney Master is well taken. The family court should keep these issues in mind on remand.

We typically do not opine on the propriety of a vacated decision, but because the family court will have to re-address maintenance on remand, we will briefly address two issues which are likely to recur. Thomas argues the family

court should not have based its calculation of his income, which obviously is an important factor in assessing maintenance, on an alleged statement he made in DVO proceedings about having a "safe full of cash." The parties have not cited to where the relevant portion of the DVO proceeding was discussed at trial or may be located in the record, nor does it appear as if Thomas designated the DVO record to be included in this appeal's record.

Generally, "[i]f evidence is missing from the record, we must assume that the trial court's decision is supported by the record." *King v. Commonwealth*, 384 S.W.3d 193, 194 (Ky.App. 2012). Moreover, as the family court noted in its order denying Thomas's CR 59.05 motion, Ninamary introduced into evidence at trial many exhibits, included in which is a transcript of a recording of Thomas (the accuracy of which he has not challenged) admitting, albeit not under oath, that he had some sort of lockbox containing cash. Therefore, though the parties have not pointed to where the lockbox of cash was specifically discussed at the trial, there was at least some evidence in this case about Thomas keeping cash on hand. There was also testimony that Chimney Master's invoices did not align precisely with the income claimed in tax documents.

If Ninamary had raised the issue of Thomas's previous testimony about the lockbox in the trial, it perhaps could have been admitted. However, this would have given Thomas the opportunity to object and perhaps testify to provide

clarification of his previous statement and explain how much cash he kept on hand and whether it was funded through cash receipts from Chimney Master. We note that a safe full of cash can mean $500,000 to one witness and $500 to another witness. In the family court inserting the DVO testimony on its own, it thereby deprived the parties from fully addressing this claim. The lack of specificity and the reliance upon DVO proceedings which lacked specificity as to the amount contained in Thomas's safe is an insufficient foundation for the family court's judgment. On remand, the family court's decision should be based upon evidence admitted *in this case*.

Thomas also argues that the family court's calculation of his net income is unexplained and not supported by citations to evidence. We agree.

The family court averaged three years of invoices from Chimney Master to determine that Thomas's gross income was $160,308 per year, and then found that Thomas's "average net pay would be approximately $109,440 per year, or $9,120 per month." It is unclear how the family court derived that net income figure. Even Ninamary only weakly posits that the family court's finding that Thomas's monthly net income is $9,120 is "very close" to the $8,872 net monthly income figure contained in her proposed findings. But the family court's figure is roughly $250 per month more than Ninamary's. We do not know how the family court reached its calculation of Thomas's net income.

-19-

We are cognizant that, as Ninamary notes, Thomas has not cited to where he preserved this argument for review. Indeed, this specific argument was not raised in his CR 59.05 motion, which would have been his first opportunity to challenge the family court's unexplained net income calculations. However, the apparent lack of preservation is of limited practical value because the family court will have to address maintenance afresh on remand, and in so doing will have to reassess Thomas's income.

"[A] finding of fact is viewed as clearly erroneous if not supported by substantial evidence of a probative value." *Maxwell v. Maxwell*, 382 S.W.3d 892, 895 (Ky.App. 2012). Though we need not definitively opine on the matter now, on remand the family court must ensure its findings are supported by substantial evidence and its mathematical computations are sufficiently explained.

For the foregoing reasons, the Jefferson Family Court's order dividing the marital property and awarding maintenance is affirmed in part and vacated in part and the matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Grant M. Helman
Stuart A. Scherer
Louisville, Kentucky

BRIEF FOR APPELLEE:

Eugene L. Mosley
Louisville, Kentucky