RENDERED: APRIL 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1453-MR

CHRISTINE SMITH AND TERRY
SMITH                                                    APPELLANTS


APPEAL FROM PIKE CIRCUIT COURT
v.          HONORABLE HOWARD KEITH HALL, JUDGE
ACTION NO. 16-CI-00198


OON LEEDHANACHOKE, M.D.                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

JONES, JUDGE: Following the denial of their motion for a new trial, the

Appellants, Christine and Terry Smith, filed this appeal seeking review of the Pike

Circuit Court's October 5, 2022 trial order and judgment in favor of the Appellee,

Dr. Oon Leedhanachoke. On appeal, the Smiths complain that the trial court erred

in refusing to strike for cause certain venirepersons from the jury pool, and in not

allowing various witnesses to testify regarding statements Dr. Leedhanachoke

allegedly made to Christine's family after her surgery. Having reviewed the record and being otherwise sufficiently advised in the law, we affirm.

## I. BACKGROUND

In 2015, Christine Smith was diagnosed with breast cancer. Shortly thereafter, Dr. Leedhanachoke performed a successful lumpectomy on Christine at Pikeville Medical Center (PMC). Dr. Leedhanachoke also twice attempted to surgically place a chemotherapy port into Christine's superior vena cava; however, during surgery, Christine's blood pressure became undetectable, and her oxygen levels declined, alerting Dr. Leedhanachoke to a problem. Apparently, the wire used for the port placement pierced Christine's vein and caused her to lose a high volume of blood. Dr. Leedhanachoke consulted a cardiologist, and they were able to stabilize Christine.

Christine awoke post-operation with no apparent cognitive defects. Afterward, she underwent chemotherapy treatments for her breast cancer. Approximately four months later, Christine began to experience neurological deficits. Thereafter, the Smiths sued Dr. Leedhanachoke, alleging that his negligence during the port placement surgery was the cause of Christine's later neurological problems.

Christine's husband Terry, son Josh, daughter Kerri, and friend Debbie Addair, were at the hospital during her surgery and recovery. They were

also present when Dr. Leedhanachoke visited and apologized for the complications and results of the port placement surgery. As part of this litigation, they testified by deposition and at trial. Terry testified at his deposition that Dr. Leedhanachoke told him to "kick my ass, I deserve it." The Smith children and Addair testified similarly.

Dr. Leedhanachoke filed multiple motions *in limine* prior to trial, including ones to prevent evidence concerning the alleged statement from Dr. Leedhanachoke from being introduced to the jury, due to its prejudicial nature. The trial court excluded mention of Dr. Leedhanachoke's "alleged comment about kicking his 'rear end[.]'"

The matter was called for trial in September of 2022. During *voir dire*, the Smiths moved the trial court to strike two potential jurors for cause because they worked at PMC, but their requests were denied. The Smiths used five peremptory strikes but failed to strike the two jurors they requested be removed for cause. The Smiths did not indicate there was any other juror they would have removed with an additional strike.

The trial lasted nine days, and multiple witnesses testified. During opening statements, counsel for the Smiths told the jurors they would hear witness testimony that Dr. Leedhanachoke was very upset after the operation, admitted he made a mistake, and said "hit me, hit me, hit me." Counsel for Dr. Leedhanachoke

objected, and a bench conference was held. The court clarified its previous ruling and admonished the jury that Dr. Leedhanachoke's statements about punishing himself were inadmissible as they were more prejudicial than probative. Further objection was made when Kerri testified that it seemed as if Dr. Leedhanachoke was trying to get her dad, Terry, to fight him after the surgery. A bench conference followed, along with the court's admonition of both the witness and jury. Dr. Leedhanachoke moved for a mistrial based on the impermissible testimony concerning his out-of-court statements, but his request was denied.

Addair testified that Dr. Leedhanachoke was "frantic" after the surgery, apologized repeatedly, and stated that "something went wrong" during the surgery and Christine lost a lot of blood. Josh testified that Dr. Leedhanachoke was "extremely frantic" post-operation, advised them of the complication, and seemed like he wanted to apologize, but the family asked him to leave. Terry testified that Dr. Leedhanachoke was very excited and frantic, as if apologizing for what happened.

Dr. Leedhanachoke testified that he was "devastated" and "very, very upset" about the outcome of the surgery and that he apologized to the family for the outcome. He further testified that the complication was unintentional and outside his control, that he did what he was supposed to do, and that the placement x-ray looked normal.

The jury ultimately found in favor of Dr. Leedhanachoke. The trial court entered its final judgment on October 5, 2022, and the Smiths moved for a new trial. The motion was denied, and this appeal followed.

## II. ANALYSIS

### A. The Trial Court's Failure to Strike Certain Jurors for Cause

A "determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Pendleton v. Commonwealth*, 83 S.W.3d 522, 527 (Ky. 2002). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

According to the Smiths, numerous members of the jury pool and/or their spouses were either former or current employees of PMC and/or current or former patients of Dr. Leedhanachoke. The Smiths assert that they requested the trial court to strike or remove all such venirepersons from the jury pool, but the trial court refused to do so.[1] As such, the Smiths claim that they were forced to use

---

[1] The Smiths also argue "there were at least 15 or 20 potential jurors in the pool who should have been stricken for cause by the trial court before jury selection began." However, the Smiths have failed to identify these potential jurors. We will not search the record to construct the Smiths' argument for them, nor will we go on a fishing expedition to find support for their underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby*

their limited peremptory strikes to remove potential jurors who should have been removed for cause by the court. For this reason, the Smiths assert that they did not have enough strikes to remove all the jurors who should have been removed for cause and thus were denied the right to select an unbiased jury panel.

However, at no point did the Smiths file any pretrial motion *in limine* or ask the court during jury selection to exclude all employees of PMC and/or all patients of Dr. Leedhanachoke. During jury selection, the Smiths only moved the trial court to strike two jurors for cause due to their relationships with PMC and/or Dr. Leedhanackoke. One of those jurors worked for PMC as a secretary and dealt with Dr. Leedhanachoke's records on some occasions; the other was a laboratory technician at PMC. Both stated that their employment would have no effect upon their ability to render a fair decision in this case, and the trial court denied the Smiths' motion to strike them for cause.

Following the completion of *voir dire*, the parties were each granted five peremptory challenges. The Smiths' strike sheet wholly failed to preserve any arguments regarding the trial court's failure to strike venirepersons for cause. Specifically, the Smiths did not indicate which individuals among the remaining twenty-four members of the panel should have been stricken for cause, which of

---

*v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). Consequently, we decline to address this issue as it is an underdeveloped and vague alleged point of error.

their peremptory strikes were being used to strike jurors that should have been stricken for cause or indicate which jurors they would have used a peremptory strike on had they not been forced to use peremptory strikes on the jurors not stricken for cause.

In *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009), the Kentucky Supreme Court held that "[i]n order to complain on appeal that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." A decade later, in *Floyd v. Neal*, 590 S.W.3d 245 252, (Ky. 2019), the Court explicitly laid out the procedures trial counsel must follow to preserve alleged errors related to failure to strike jurors for cause as follows:

> [W]e hold that to preserve the error that a trial court failed to strike a juror for cause a litigant must: (1) move to strike the juror for cause and be denied; (2) exercise a peremptory strike on said juror, and show the use of that peremptory strike on the strike sheet, and exhaust all other peremptory strikes; (3) clearly indicate by writing on her strike sheet the juror she would have used a peremptory strike on, had she not been forced to use a peremptory on the juror complained of for cause; (4) designate the same number of would-be peremptory strikes as the number of jurors complained of for cause; (5) the would-be peremptory strikes must be made known to the court prior to the jury being empaneled; and (6) the juror identified on the litigant's strike sheet must ultimately sit on the jury.

*Id.* The Court demands strict compliance with the preservation requirements. *Id.* at 248-52.

The Smiths should have brought their issues to the trial court's attention by recording their objections in writing on their strike sheet in the manner described in *Floyd*. However, they failed to do so, which prevents our review of their arguments.

### B. Exclusion of Testimony About Dr. Leedhanachoke's Statements & Behavior

The Smiths also argue that additional evidence of Dr. Leedhanachoke's out-of-court statements made to Christine's family and friends should have been permitted. When reviewing a trial court's evidentiary rulings, our review is limited to a determination of whether the trial court abused its discretion. *Kentucky Guardianship Administrators, LLC v. Baptist Healthcare System, Inc.*, 635 S.W.3d 14, 20 (Ky. 2021). "Rulings upon admissibility of evidence are within the discretion of the trial judge," and we will not reverse absent a "clear abuse of discretion." *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky. 1994).

A party's own out of court statement is admissible notwithstanding the hearsay rules if the statement is being offered against the party. KRE[2] 801A(b)(1). Thus, Dr. Leedhanachoke's statements to Christine's family and

---

[2] Kentucky Rules of Evidence.

friends were admissible notwithstanding the general prohibition against the introduction of hearsay evidence. However, this does not mean that the trial court was required to allow them into the record. Even though relevant and otherwise admissible, evidence may be excluded if "its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

Ultimately, the trial court allowed a significant amount of testimony into the record concerning Dr. Leedhanachoke's statements and demeanor after the surgery. At the end of the day, the only major statement that the trial court disallowed was that Dr. Leedhanachoke indicated that Terry should "kick his ass" for how the surgery turned out and some of his exact mannerisms. Even without this statement, the jury heard how upset Dr. Leedhanachoke appeared to be after the surgery, and that the family believed that he was trying to apologize to them about its outcome.

Even if we did believe the trial court should have allowed all of Dr. Leedhanachoke's comments and behaviors to be broadcast to the jury, we cannot conclude that that omitted portion resulted in harmful error. The jury heard testimony that Dr. Leedhanachoke was very upset after the surgery and that he appeared to be trying to apologize to Christine's family. This was sufficient for the

jury to conclude that Dr. Leedhanachoke blamed himself for how the surgery turned out, and to create an inference that Dr. Leedhanachoke may have done something wrong to cause that outcome. Dr. Leedhanachoke's exact statement that someone should "kick his ass," while colorful, would not have appreciably strengthened this inference. Moreover, this was a lengthy trial replete with expert opinions regarding Dr. Leedhanachoke's actions during surgery. Such testimony is far more probative regarding whether Dr. Leedhanachoke complied with the standard of care than this ambiguous statement after the surgery. *See Hashmi v. Kelly*, 379 S.W.3d 108, 114 (Ky. 2012) ("Ultimately, this was an eight-day trial, about which the Appellee complains only of a single five-word sentence. Such an isolated remark, especially when balanced against more fully developed testimony from other experts, can have little if any prejudicial effect.").

### III. CONCLUSION

For the foregoing reasons, the orders of the Pike Circuit Court are affirmed.


ALL CONCUR.

-10-

BRIEFS FOR APPELLANTS:            BRIEF FOR APPELLEE:

H. Truman Chafin                  David F. Latherow
Letitia Neese Chafin              Dustin C. Haley
Stacey Kohari                     Ashland, Kentucky
Williamson, West Virginia

Marvin W. Masters
Charleston, West Virginia